**Doris SOUTH and James South, Plaintiffs-Appellants,**

v.

**David COLIP, and Mark M. Dudley, d/b/a Johnson & Dudley Real Estate, Defendants-Appellees.**

No. 1–1281A359.

Court of Appeals of Indiana, First District.

July 15, 1982.

Louis Rosenberg, UAW Legal Services Plan, Indianapolis, for appellants.

Mark B. Hillis, Bryce H. Bennett, Jr., Callahan, Riley & Hillis, Indianapolis, for appellees.

ROBERTSON, Judge.

Doris and James South (Souths) appeal the trial court's decision granting summary judgment in favor of David Colip (Colip) and Mark M. Dudley (Dudley), who were doing business as Johnson and Dudley Real Estate, on their complaint for fraud and negligent misrepresentation in regard to the sale of a home.

We affirm.

On May 13, 1978, Souths saw a for-sale sign designating Johnson and Dudley as realtors in the yard of a home belonging to Alva and Judy Meyers. Souths contacted the agency and Colip showed them the home. During the visit, Meyers made several statements about the property to the effect that all the major systems and appliances were new or in good condition, that the plumbing was in good condition, that the electric bill would not exceed $35.00 per month, that the gas bill would not exceed

**496**

$475.00 per year, and that the dishwasher worked properly. Colip was present when these statements were made.

Just after this visit, Colip told Souths they did not have to worry about the property's condition because Alva Meyers was a perfectionist and skilled in home maintenance. Colip also showed Souths a picture of the house from the realty listing. The listing contained the statement that the house had a new roof. According to Souths, Colip repeated this statement. Colip also discussed an offer for the property with the Souths. The property was listed at $44,900.00 and Colip advised an offer of $42,900.00, which the Souths made and which was accepted. The purchase agreement contained the following language:

Inspection of said real estate is hereby waived by purchaser who is relying entirely for its condition upon his own examination, and purchaser hereby releases the seller, brokers, REALTOR(S) and salespeople herein from any and all liability relating to any defect or deficiency affecting said real estate, which release shall survive the closing of the transaction.

The Souths took possession of the property on September 22, 1978, and began to experience problems with the plumbing, dishwasher, furnace, water heater and the roof. The utility bills were also higher than Meyers' estimates.

As a result, Souths initiated this lawsuit on March 26, 1980, seeking a total of $150,000 in damages against the Meyers, Colip, and Dudley. On September 25, 1980, Colip and Dudley filed a motion for summary judgment. The motion was heard on April 9, 1981, and taken under advisement, apparently to allow Souths to depose the defendants and to allow the defendants to file affidavits.

On May 6, 1981, Dudley and Colip were deposed. On May 20, 1981, Colip and Dudley submitted an affidavit from Dudley. On May 22, 1981, the reporter mailed the depositions to Dudley and Colip. On May 28, 1981, the trial court granted summary judgment in favor of the defendants. The judgment read:

"The court having examined Defendants Motion for Summary Judgment and Brief in Support and having read and considered the pleadings, briefs, *depositions* and affidavits filed in this cause and having heard the parties oral argument and being duly advised in the premises now finds that:

1. The Defendants David L. Colip and Mark M. Dudley d/b/a Johnson & Dudley Real Estate, motion for summary judgment in their favor is meritorious and is hereby granted.

2. That there is no just reason for delay in entering a final entry of judgment in favor of defendants David L. Colip and Mark M. Dudley d/b/a Johnson & Dudley Real Estate.

3. The clerk is hereby ordered to enter judgment in favor of defendants David L. Colip and Mark M. Dudley d/b/a Johnson & Dudley Real Estate forthwith." (Emphasis added.)

On June 26, 1981, the deposition reporter filed a certificate stating that Dudley's and Colip's depositions had not been returned within 30 days after they were mailed to them.

Souths filed their motion to correct errors on July 22, 1981, alleging that the trial court erred by granting summary judgment; 1) because the evidence was insufficient that the defendants had not misrepresented facts and that they had no knowledge of defects; 2) because as a matter of law the waiver clause in the purchase agreement was ineffective for a claim based on fraud; 3) because the waiver clause was ineffective for a claim based on negligent misrepresentation. In their motion to correct errors, Souths referred to Dudley's and Colip's depositions.

In response to the motion to correct errors, Dudley and Colip filed a motion to strike all references to their depositions contained in it on grounds that the depositions had not been published. Souths countered with a motion to publish the depositions on September 28, 1981. That day, the

trial court denied Souths' motion to correct errors and their motion to publish the depositions, while granting the defendants' motion to strike. The court also deleted the reference to depositions in its judgment on May 28, 1981. Thereafter, on October 13, 1981, the reporter filed Colip's deposition. On October 16, 1981, Souths filed a motion asking the trial court to reconsider its ruling on their motion to correct errors and motion to publish depositions. They also filed a copy of Dudley's deposition. Finally on October 19, 1981, Dudley's original deposition was filed with the trial court. The trial court did not rule on the motion to reconsider and this appeal followed.

On appeal, Souths argue the trial court erred by denying their motion to publish the depositions on the grounds that they had not been filed. In a related argument, Souths assert the trial court abused its discretion by denying their motion to reconsider in light of the fact that the depositions were ultimately filed with the court. They also contend the denial of their motion to publish violated the policy underlying Ind. Rules of Procedure, Trial Rule 56 that a broad evidentiary base be used to resolve motions for summary judgment.

Souths base these arguments on Ind. Rules of Procedure, Trial Rule 30(E)(4), which provides that:

> (4) In the event the deposition is not returned to the officer within thirty (30) days after it has been submitted to the witness, the reporter shall execute a certificate of that fact and cause the certificate to be filed with the Court. In such event, any party may use a copy of the deposition with the same force and effect as though the original had been signed by the witness and filed with the Court by the officer.

Souths argue that because the depositions had not been returned to the reporter, they in turn had not been filed with the court at the time the motion to publish was filed and pursuant to T.R. 30(E)(4) did not need to have been filed before they could be used.

At this point it is important to re-examine the chronological order of events. Souths' motion to publish was filed on September 28, 1981. The depositions were not filed until later, Colip's on October 13, 1981, and Dudley's on October 19, 1981. The deposition reporter certified to the trial court that the depositions had not been returned within 30 days on June 26, 1981. The reporter had mailed the depositions to Colip and Dudley on May 22, 1981. Summary judgment was entered against the Souths on May 28, 1981, and their motion to correct errors was filed on July 22, 1981.

In so far as their motion to publish is concerned, the Souths are correct in their assertion that the 30 day period specified in T.R. 30(E)(4) had expired and that the reporter's certificate would have been sufficient to allow use of the depositions. However, the Souths have focused on the wrong point in the proceedings. The issue is not whether the depositions were properly available for use when the motions to reconsider and to publish were filed. Instead, the issue is whether the depositions were available at earlier times during the proceedings, or if unavailable, whether error occurred which required the Souths to bring the issue to the trial court's attention.

█ A party opposing a motion for summary judgment must diligently contest the motion by presenting enough facts to show there is a genuine issue for trial. *E.g., Associates Financial Service, Etc. v. Knapp*, (1981) Ind.App., 422 N.E.2d 1261. In the case at bar, Souths were attempting to contest the motion with the defendants' depositions and therefore, it was their responsibility to present the depositions to the trial court. The trial court entered summary judgment prior to the filing of the depositions and consequently without considering them. This should have been apparent to Souths because they had not received notice from the reporter that the deposition had been filed as required by T.R. 30(E)(3) which states:

> (3) The officer taking the deposition shall give prompt notice of its filing to all other parties.

Also prior to the filing of Souths' motion to correct errors, the reporter had certified that the depositions had not been returned pursuant to T.R. 30(E)(4). Thus, despite the reference to depositions in the trial court's judgment entry, Souths were on notice that the depositions were not on file. In the context of this case, we think the trial court erred by entering summary judgment without examining the depositions which potentially could have revealed genuine issues for trial.[1] *See, Rembold Motors Inc. v. Bonfield*, (1973) 155 Ind.App. 422, 293 N.E.2d 210. The Souths should have raised this issue in their motion to correct errors and requested publication at that time. It is a well recognized principle of law that a party must raise errors in a timely manner in order to allow a trial court to expeditiously rectify its errors. Because of Souths' failure to properly raise the deposition issue in their motion to correct errors, they waived the issue. *Cunningham v. Associates, Cap. Ser. Corp.*, (1981) Ind.App., 421 N.E.2d 681; *Means v. Financial Corp.*, (1981) Ind.App., 416 N.E.2d 896. Ind. Rules of Procedure, Trial Rule 59, (amended), Advisory Committee Notes, 4 W. Harvey & R. Townsend, Indiana Practice, 1982, Supp. p. 11. Thus, their motions to publish and to reconsider were untimely and the trial court did not abuse its discretion by denying them.

Souths also argue there were genuine issues of material fact which should have precluded summary judgment. The appropriate standard for summary judgment is well known:

> In reviewing the propriety of a summary judgment, the pleadings, depositions, answers to interrogatories, admissions, affidavits, and testimony, if any, are to be construed in favor of the non-moving party and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. Summary judgment should be granted only where no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. The burden is upon the moving party to demonstrate the absence of any material fact.

*Means v. Financial Corp., supra.* 416 N.E.2d at 898. (Citations omitted.)

Keeping this standard in mind, we do not find genuine issues of material facts and therefore, the trial court did not err by granting summary judgment. The Souths rely on two statements to support their argument: 1) Colip's statement about Mr. Meyers's home maintenance skills and 2) Colip's restatement of the representation made in the real estate listing that the home had a new roof.

In addition to the facts already presented, Dudley submitted an affidavit which in part stated that Colip had informed the Souths that the residence was not new and that they were entitled to make their purchase contingent upon an independent professional inspection of the property. Souths have not contested this statement, but instead have argued Dudley and Colip had prior knowledge of defects in the house.

■ The elements of fraud, which must be proved by a preponderance of the evidence, are 1) A material misrepresentation of past or existing fact made with knowledge that the representation was untrue or recklessly made; 2) reliance on the representation by another party; 3) resulting in that party's acting to his detriment. *Fleetwood v. Mirich*, (1980) Ind.App., 404 N.E.2d 38; *Gonderman v. State Exchange Bank, Loan*, (1975) 166 Ind.App. 181, 334 N.E.2d 724.

There is, however, a corollary rule of law pertaining to reliance on representations which is applicable to the case at bar. It was discussed at length in *Plymale v. Upright*, (1981) Ind.App., 419 N.E.2d 756.

Reliance

---

1. There could be situations where no matter what discovery revealed, one party would be entitled to judgment as a matter of law, i.e. a situation for failure to state a claim for which relief could be granted treated as a motion for summary judgment because of the evidence considered.

As noted at the opening of the discussion, reliance upon a misrepresentation is a material element of a cause of action in fraud. In *Frenzel v. Miller*, (1871) 37 Ind. 1, 17, the Supreme Court stated:

"To constitute a misrepresentation a ground of fraud [sic] for avoiding the contract, or to entitle the injured party to his action, it must be in regard to a material fact, operating as an inducement to the purchase or the making of the contract, and upon which the purchaser or person making the contract had a clear right to rely; and the party complaining must have been actually deceived thereby; and generally, such representation must not be mere matter of opinion, or in respect of facts equally open to the observation of both parties, and concerning which the party complaining, had he exercised ordinary prudence, could have attained correct knowledge. If a party blindly trusts, where he should not, and closes his eyes, where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies *volenti non fit injuria*." (Original emphasis.)

419 N.E.2d at 761.

■ We do not think the Souths were justified in relying on the "statements" they cite to support their case. Colip's remarks concerning Meyers's home maintenance skills were clearly his opinion about those skills and not specific statements of fact pertaining to the property. The statement concerning the "new roof" was repeated from the realty listing which Souths admit they saw. The listing specified the realtor was not warranting any representations made in the listing. Additionally the Souths were told of their right to have an independent inspection of the property, but chose not to exercise this option.

Although Souths were not sophisticated purchasers of realty like the plaintiff in *Plymale*, who was in the construction business and had engaged in numerous transactions, common sense dictates that a consum-

er be diligent in protecting his interests in a purchase of this magnitude. This is particularly true in the absence of any evidence indicating "high pressure" sales techniques and/or any incapacity which would have prevented Souths from understanding the transaction.[2]

Souths also assert the exculpatory clause should not be given effect because fraud or misrepresentation vitiates the effectiveness of such a clause. Because of our determination that the necessary elements of fraud are not present in this case, this argument must fail.

Finally, Souths assert the waiver and release clause is unconscionable because of a disparity in bargaining power between purchasers and sellers, and because the defendants advised them on the amount of their offer thereby creating a confidential relationship. Souths rely on *Weaver v. American Oil Company*, (1971) 258 Ind. 458, 276 N.E.2d 144. The cases are not similar. In *Weaver*, the exculpatory clause was combined with an indemnification provision requiring the lessee to absolve the lessor of any negligence in the operation of a gasoline station and to indemnify the lessor. The lessee did not read the lease. The court held the clause was unconscionable and based its decision on the fact that the oil company's superior position allowed it to unjustly take advantage of the lessee's economic necessities.

■ In the case at bar, there is no such disparity in bargaining power. The Souths were told their offer could be contingent on an inspection of the property. In that context, the exculpatory clause is not unjust. Also, Colip was clearly representing the sellers, Meyers, throughout the transaction. Therefore his advice on an acceptable offer did not give rise to a confidential relationship with the Souths nor the appearance of one. The waiver and release clause is not unconscionable.

N.E.2d 575.

2. This conclusion is consistent with the rationale of *Vetor v. Shockly*, (1981) Ind.App., 414

For these reasons, the trial court's judgment is affirmed.

RATLIFF, P. J., and NEAL, J., concur.