Julie VAN ORDEN, Appellant,

v.

STATE of Indiana, Appellee.

No. 183S8.

Supreme Court of Indiana.

Oct. 26, 1984.

Rehearing Denied Dec. 28, 1984.

Charles L. Berger, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Julie Van Orden was found guilty of murder by a jury in the Bartholomew Circuit Court and subsequently was sentenced by the trial judge to a term of forty years imprisonment. She now directly appeals and raises the following seven issues for our consideration:

1. denial of Appellant's motion to suppress a certain manuscript written by her;

2. denial of Appellant's request to begin opening and closing arguments and to present her evidence before the State's presentation;

3. denial of Appellant's motion to televise the trial proceedings;

4. admission into evidence of slides depicting the victim's body at an autopsy;

5. denial of Appellant's objection to a police officer demonstrating the position of the victim's body when shot;

6. denial of Appellant's motion for mistrial based on prosecutorial misconduct; and

7. alleged error in the giving or refusing of certain final instructions.

The evidence shows that on March 19, 1980, Appellant and her mother owned and resided in a small house in Evansville. They had experienced difficulty with city officials over the manner in which their property was maintained and Appellant previously had confronted city officials regarding these problems. Apparently there was no inside plumbing in the house and there were many complaints from neighbors regarding the premises. During some of the period of Appellant's residency in Evansville, Russell G. Lloyd, Sr., was Mayor of Evansville but on March 19, 1980, he was not Mayor as he had decided not to stand for reelection. On that date, Appellant went to Lloyd's home and shot him with a revolver thereby causing his death. On November 20, 1981, Appellant filed a document styled "Admission of Facts" whereby she admitted that she shot Lloyd with a revolver and caused his death. She further indicated that her defense in this case was that she was "not responsible for her conduct which took Russell G. Lloyd, Sr.'s life, because said conduct was the result of a mental disease or defect, which caused [her] to lack substantial capacity

either to appreciate the wrongfulness of her conduct, or to conform her conduct to the requirements of law."

## I

Appellant first claims that the trial court erred by denying her motion to suppress a manuscript written by her while she was incarcerated in jail and given to personnel of Evansville television station 25. Appellant confessed to committing this crime in said manuscript which she characterized as her "life story." Although Appellant told channel 25 personnel that she wrote the manuscript to "tell her side of the story," Appellant now claims that the manuscript was not knowingly and voluntarily given to station 25 since she was suffering from a mental disease. Dr. Karleen Hammitt, a psychiatrist at the Madison State Hospital, testified during the hearing on Appellant's motion to suppress that the relinquishment of the manuscript was a product of Appellant's psychosis. Appellant now contends that the State did not sustain its burden to show that the manuscript was knowingly and voluntarily given and therefore the manuscript was inadmissible.

Karen Dillon testified at the suppression hearing that she was a news reporter and co-anchor at TV station 25 and had talked on the telephone with Appellant some eight to twelve times. During these conversations which were instigated by Appellant, Appellant discussed her case and said that she was writing a manuscript which she would give to Dillon. Dillon kept the lines of communication open while attempting without success to get permission from Appellant to interview her. Dillon further testified that Appellant was aware that Lloyd had been shot and killed and that she had been charged with the crime. Appellant told Dillon of the encounters she had with the City and described instances in which she thought she was being unfairly treated. Throughout these conversations, some of which were tape recorded, Appellant told Dillon about the circumstances of her predicament and about the proceedings then pending such as the hearing to determine Appellant's competency to stand trial. Stanley Clark testified that he was the channel 25 news director and had talked to Appellant on the phone two or three times. He also observed that Appellant was coherent and cognizant of her predicament as she discussed with him her competency hearing and said she needed his assistance since she did not want to be found incompetent by the judge. Dillon and Clark discussed with Appellant the prospect of publishing her manuscript by reporting about it on television. Apparently the only limitation Appellant put on such publication was that certain personal events in her life, particularly those pertaining to her sexual encounters with men, could not be discussed. The manuscript subsequently was delivered to the station by Appellant's mother.

When reviewing a trial court's ruling on the voluntariness of a statement, this Court will neither weigh the evidence nor judge the credibility of witnesses. Instead, we will examine the evidence and reasonable inferences therefrom which are favorable to the trial court's ruling together with any uncontroverted, adverse evidence. If there is substantial evidence to support the trial court's ruling, it will not be disturbed. *Heartfield v. State*, (1984) Ind., 459 N.E.2d 33. In the instant case, there is no evidence that Appellant was subjected to coercive measures or trickery to channel 25 employees that might have served to overbear her will. Moreover, there is no inference that employees of the television station were in some manner acting as agents of the State to extract a statement from Appellant. The evidence shows that Appellant freely talked with Dillon and Clark and willingly gave her manuscript to the television station. We agree with the State that a review of the evidence presented supports the trial court's determination that Appellant knowingly and voluntarily gave the manuscript to the TV station. Accordingly, we find that the trial court did not err by denying Appellant's motion to suppress.

## II

Appellant next claims that since she had the burden of proving her insanity defense, the trial court erred by refusing to permit her to begin opening argument, to begin final argument and to present her evidence prior to the State's presentation of evidence. There is no merit to this contention. Ind.Code § 35–36–2–2 (Burns Supp. 1984) defines the order of trial and provides that the prosecuting attorney is to make his opening statement followed by the defendant's opening statement. The statute further provides that the prosecuting attorney shall offer evidence in support of the prosecution before the defendant shall offer evidence in support of her defense and shall open and close the final argument. Ind.Code § 35–36–2–2 (Burns Supp.1984) provides that testimony to establish an insanity defense must follow the presentation of evidence for the prosecution and for the defense. The existence or non-existence of insanity does not negate the necessity of the State to prove the required elements of the crime. Since the insanity defense is directly related to the homicide offense, it is essential to consider the circumstances of the homicide which directly affect a defendant's culpability. The proper procedure was followed by the trial court here.

## III

Prior to trial, Appellant filed a motion to televise the proceedings which was denied by the trial court. She now contends that she was denied a fair and public trial due to the failure of the trial court to televise the proceedings. In *Nixon v. Warner Communications, Inc.*, (1978) 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570, the United States Supreme Court held that the Sixth Amendment to the United States Constitution does not require that a trial be broadcast live or on tape to the public. The requirements of a public trial are satisfied by the opportunity for both the public and the press not only to attend the trial but to report what they observe. Those requirements were met in this case. Appellant was tried in a public trial in which the courtroom was open for the public and the press to attend and to publish or report what they observed.

## IV

The trial court admitted into evidence certain photographic slides—State's Exhibits 42, 43, 44, 45, 46, and 49—which depicted the victim's body at an autopsy. On appeal, Appellant contends that the slides were irrelevant, inflammatory and cumulative because she had admitted that the victim died by being shot.

We have many times held that the trial court's decision to admit photographs into evidence will be reversed only upon showing an abuse of discretion. Admissibility involves the photograph's relevance which may be determined by an inquiry into whether a witness would be permitted to verbally describe the objects photographed. Also germane is whether the photographs are illustrative of a witness' testimony and tend to prove the cause of death. *Reynolds v. State*, (1984) Ind., 460 N.E.2d 506, *on rehearing*, Ind., 463 N.E.2d 1087; *Grimes v. State*, (1983) Ind., 450 N.E.2d 512.

The photographs in question demonstrated the nature and extent of the victim's wounds by showing the entrance and exit paths of the bullets which caused death. As such, the photographs served to elucidate and explain relevant oral testimony given at the trial. There is, therefore, no showing that the photographs were unnecessarily repetitive, gruesome or otherwise calculated to arouse the passions and prejudice of the jury. There is no showing that the trial court abused its discretion by admitting these exhibits into evidence.

## V

Appellant also claims that the trial court erred by overruling her objection to a police officer demonstrating the position of the victim's body when the bullets fired by Appellant entered it. Evansville Police Officer John Althoff offered an opinion about

the path of the bullets through the victim's body and clarified his opinion by demonstrating the position of the victim's body when shot. Appellant's argument is that the trial court erred by overruling her objections because the State failed to qualify Officer Althoff as an expert witness in the field of ballistics.

An expert witness is one who is presumed to have special qualifications in a profession or vocation by reason of his or her education, training and experience. A witness who has qualified as an expert in a field may give expert opinions and conclusions and the jury is permitted to weigh the testimony of the qualified expert witness in the same manner it weighs the testimony from any other witness taking into consideration the probability of truth with which the witness speaks together with the facts from which the witness draws his or her conclusions. *Lynn v. State,* (1979) 271 Ind. 297, 392 N.E.2d 449, *reh. denied.* Courtroom demonstrations are admissible subject to the trial court's discretion and, on appeal, the trial court's discretion with respect to the admissibility of demonstrations is subject to review only for an abuse of discretion. *Partlow v. State,* (1983) Ind., 453 N.E.2d 259, *cert. denied* (1984) — U.S. ——, 104 S.Ct. 983, 79 L.Ed.2d 219; *Mitchell v. State,* (1978) 270 Ind. 4, 382 N.E.2d 932.

The evidence in the instant case showed that Officer Althoff had extensive training and experience in the investigation of crime scenes including homicides. This training and experience included ballistics. There was, therefore, sufficient testimony offered by the State to lay a proper and sufficient foundation to justify the trial court in finding that Officer Althoff was qualified to give his opinions on the bullet trajectories and the position of the victim's body when shot. *Lynn, supra.* Considering all of the other evidence before the jury, we fail to find any undue prejudice occasioned to Appellant by the admission of this testimony.

## VI

Appellant next claims that the trial court erred by overruling her motion for mistrial after the prosecuting attorney attempted to single out portions of her manuscript (see Issue I) in contravention of the trial court's prior order. The trial court previously had ordered that it would not permit the presentation of any individual parts of the manuscript to the jury but would require that the manuscript be presented *in toto.* After the Exhibit was admitted into evidence, the prosecuting attorney proceeded to qualify a witness to read the transcript into evidence. Specifically, he asked the witness to first read pages 47 and 48 into evidence. Appellant objected, however, claiming that this procedure was a violation of the trial court's previous order. The trial judge agreed and ordered the manuscript read in its entirety from beginning to end which was done. Appellant moved for mistrial claiming that because attention was drawn to pages 47 and 48 on which Appellant recounted how she shot the victim, the jurors were prejudiced by having their minds focused to those pages such that Appellant was placed in grave peril. Outside of the jury's presence, the trial judge reprimanded the prosecuting attorney for attempting to read pages 47 and 48 ahead of the entire transcript in violation of his order. The trial judge also admonished the jury to disregard what had occurred but overruled Appellant's motion for mistrial.

The decision to grant or deny a mistrial lies in the sound discretion of the trial court and is reviewed only in terms of whether that discretion was abused. *Sandlin v. State,* (1984) Ind., 461 N.E.2d 1116; *Ramos v. State,* (1982) Ind., 433 N.E.2d 757, *reh. denied.* In *Maldonado v. State,* (1967) 265 Ind. 492, 355 N.E.2d 843, this Court provided that when there is prosecutorial misconduct, the trial court must first determine that the prosecutor actually engaged in misconduct and then consider whether the misconduct under all the circumstances placed the defendant in a position of grave peril to which he should not

have been subjected. On review, this Court will of course take into consideration any admonishment given by the trial judge and its curative effect to any prejudice that potentially was created. Normally an admonishment to the jury is considered adequately curative and will support a trial judge in his denial of a mistrial. The test is not exclusively the manner in which the possibly harmful statements enter the case but rather the probable impact of the irregularity on the verdict. We require an assurance that there was no residuum of prejudice remaining after the jury was admonished. *Coleman v. State*, (1982) Ind., 433 N.E.2d 384; *Davis v. State*, (1981) Ind., 418 N.E.2d 203. Here, there was only a reference made to certain pages by the prosecutor whereupon he immediately was stopped by the trial judge. The entire manuscript was then read to the jury. Although pages 47 and 48 were the ones on which Appellant gave the details of the shooting of the victim, it does not appear that the fact that the prosecutor mentioned the numbers of those pages gave any more emphasis to them than the substance of their content. We therefore do not agree with Appellant that this mere reference to the page numbers placed her in a position of such grave peril that the curative measures taken by the trial court were not sufficient. We do not find that the trial court abused its discretion by denying Appellant's mistrial motion.

## VII

■ Appellant next claims that the trial court erred by giving and refusing certain final instructions. The trial court gave the following State's final instruction 2:

"You are instructed that the burden of proof is on the Defendant to establish the defense of legal insanity by a preponderance of the evidence.

The term 'preponderance of the evidence' means the weight of the evidence. The number of witnesses testifying to a fact on one side or the other or the quantity of evidence introduced on one side or the other is not necessarily of the greater weight. A preponderance of the evidence means you must be convinced from all the evidence in the case that the Defendant was more probably legally insane than legally sane at the time of the act charged.

If you are more strongly convinced that at the time of the alleged offense the Defendant was more probably legally sane than legally insane, or if the evidence is evenly balanced upon the question of legal insanity and legal sanity, your finding upon that question should be against the Defendant because under such circumstances the Defendant has failed to sustain the burden of proof on such issue by a fair preponderance of the evidence." [Footnotes omitted].

Appellant now argues that the trial court erred by giving this instruction since it does not adequately and succinctly state the law concerning the burden of proof when an insanity defense is asserted. Ind. Code § 35–41–4–1(b) (Burns 1979) places on the defendant the burden of proving by a preponderance of the evidence the defense of insanity. This instruction properly explains to the jury Appellant's burden and properly defines "preponderance of the evidence." A similar instruction was approved by this Court in *Emory v. State*, (1981) Ind., 420 N.E.2d 883. Another similar instruction explaining "preponderance of the evidence" also was approved in *Great Atlantic & Pacific Tea Co. v. Custin*, (1938) 214 Ind. 54, 13 N.E.2d 542, *reh. denied*, 214 Ind. 54, 14 N.E.2d 538. There was no error in the giving of this instruction.

■ The trial court also gave the following State's final instruction 5:

"In order for a killing which would otherwise be murder to be reduced to voluntary manslaughter the killing must have been upon a sudden heat of passion, caused by sufficient provocation upon the part of the one killed, and the killing must have following (sic) the provocation before there had been a reasonable opportunity for the passion to cool, and there must have been a casual connection

between the provocation, the passion, and the fatal act.

The law does not recognize the use of words alone as sufficient provocation to reduce the offense from murder to manslaughter, the other essential elements of the crime of murder being present.

Before provocation would be sufficient, the person killed must be doing some act which at the time is of such a character that so inflames the mind and excites sudden and angry passions of the one who does the killing that he does not act with deliberation, but that his mind is in a heat of passion whereby he is incapable of deliberation or reason.

If death, though knowingly or intentionally caused, appears to have been inflicted immediately after provocation deemed by the law adequate to excite sudden and angry passions in the mind of persons ordinarily constituted, and before sufficient time elapses for deliberation and for the passions to subside or cool, then this fact reduces the offense from murder to manslaughter. The killing is still unlawful, however, because a person is bound to curb his passions, and the offense, if all other essential elements exist, is voluntary manslaughter."

Appellant's objection to this instruction is that it is confusing, repetitive and a misinterpretation of the law. We disagree. Instructions substantially similar to this one were approved in *Tinsley v. State*, (1977) 265 Ind. 642, 358 N.E.2d 743, and *New v. State*, (1970), 254 Ind. 307, 259 N.E.2d 696. This instruction clearly and accurately states the law and was properly given.

■ The following was given by the trial court as the State's final instruction 9:

"You are instructed that where a specific intent is required to make an act an offense, such as in the charge preferred against the Defendant, the State is not required to make proof of specific intent by direct evidence, for purpose and intent are subjective facts. That is, they exist within the mind of man, and since you cannot delve into a person's mind and determine his purpose and intent, you

may look to all the surrounding circumstances, including what was said and done in relation thereto. The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the defendant with the degree of culpability charged in the Information. Everyone is presumed to intend the natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the absence of such intent. A determination of the Defendant's intent may be arrived at by the jury from a consideration of the Defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points.

When an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the State in the absence of justifying or excusing facts, since the law presumes a criminal intent from an unlawful act knowingly done."

On appeal, Appellant claims that the trial court erred by giving this instruction because it misinterprets the law and has the effect of improperly shifting the burden of proof on the issue of intent contrary to *Sandstrom v. Montana*, (1979) 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. An instruction substantially similar to this was given in *Jacks v. State*, (1979) 271 Ind. 611, 394 N.E.2d 166, *reh. denied* [Issue VI, instruction 5] wherein this Court considered the same objections as now presented. We distinguished the instruction in *Jacks* from the one found repugnant in *Sandstrom* by finding that the jury in *Sandstrom* was told: "The law presumes that a person intends the ordinary consequences of his voluntary acts." In *Sandstrom*, the jury was not told that it might infer that conclusion but rather was told that the law presumed it. It was held by the United States Supreme Court in *Sandstrom* that a reasonable juror could easily have viewed such an instruction as mandatory. The present instruction, however, was qualified since it instructed the jurors to consider all of the

surrounding circumstances including what was said and what was done in relation to the alleged criminal acts and, further, that everyone is presumed to intend the natural consequences of his voluntary acts unless the circumstances indicate the absence of such intent. The second paragraph of the instruction properly states that when an unlawful act is knowingly done, no further proof is needed on the part of the State in the absence of justifying or excusing facts. The instruction here did not have the limited and mandatory language of that rejected in *Sandstrom* and therefore was properly given.

Finally, Appellant claims that the trial court erred by refusing to give her tendered proposed final instruction 2 concerning the legal definition of insanity. Appellant's instruction 2 was as follows:

> "You are instructed that within the legal definition of insanity is included the factual situation where the defendant appreciated the fact that her conduct was criminal but because of a delusion believed it to be morally justified."

In determining whether an instruction was properly refused, this Court, on review, must consider whether the tendered instruction correctly stated the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction was covered by other instructions which were given. *Hollon v. State*, (1980) 272 Ind. 439, 398 N.E.2d 1273. Here the trial court gave its own instruction defining the defense of insanity. The trial court's final instruction 10.11 was as follows:

> "The defense of insanity is defined by law as follows:
>
> A person is not responsible for having engaged in prohibited conduct, if, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the wrongfulness of the conduct or to conform his conduct to the requirements of law.
>
> 'Mental disease or defect' does not include an abnormality manifested only by repeated unlawful or antisocial conduct.

> The burden of proof is on the defendant to establish the defense of insanity by a preponderance of the evidence. A preponderance of the evidence means you must be convinced from all of the evidence in the case that the defendant was more probably insane than sane at the time of the act charged."

We now find that instruction 10.11 fully explained the concept and legal defense of insanity. Since the subject was well covered by the trial court, there was no error in the denial of Appellant's tendered instruction 2.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result.