Linda Kay JOHNSON and Charles F. Roark, Appellants (Defendants Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 64A03–8908–CR–370.

Court of Appeals of Indiana, Third District.

July 3, 1990.

James V. Tsoutsouris, Public Defender, Porter County, Joanne Tapocsi–Lohmeyer, Deputy Public Defender, Valparaiso, for appellants.

Linley E. Pearson, Atty. Gen. of Indiana, Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

In a consolidated appeal, Linda Kay Johnson and Charles F. Roark appeal their conviction for neglect of a dependent, a class D felony. Their appeal presents the following issues for our review:

I. Whether the conduct of the prosecuting attorney in alluding to intentional infliction of injuries constituted prosecutorial misconduct.

II. Whether the trial court properly refused defendants' tendered instruction relating to the voluntary assumption of care of a child.

III. Whether the evidence was sufficient to support the jury's verdicts.

Affirmed.

On January 14, 1988, the defendant, Linda Kay Johnson (Johnson), was visiting her boyfriend, defendant Charles F. Roark (Roark). There was conflicting testimony as to exact times, but at some point during the day, she decided to do some washing. Since her 17-month-old infant, A.J., was sleeping, she decided to leave her with Roark. Later that evening, Roark began to give A.J. and two of his children a bath. He left the bathroom to get some towels, and while he was gone, he heard the shower go on and A.J. begin to cry. When Roark returned to the bathroom, the shower was off but still dripping. Although neither of Roark's daughters were burned, A.J. appeared pink or red, like a sunburn. Roark dried her off, allowed the children to play together for a few hours, then put A.J. to bed with a bottle.

Around 10:30 p.m., Johnson called the house. Roark informed her of the incident with A.J. Johnson returned to the house around 1:00 a.m., and listened at the door of the room in which A.J. was sleeping. She heard no crying, so she went to bed.

The next morning, Roark's oldest daughter awakened to A.J.'s crying. A.J. was blistered, and her eyes were swollen shut. Johnson applied A & D ointment and vitamin E to the child and bathed her in cold water, but didn't take her to the doctor immediately because her car didn't have enough gas.

Johnson finally took A.J. to the hospital at 5:00 p.m. A.J. was diagnosed with first, second, and third degree burns over 20 percent of her body, and was hospitalized for two weeks as a result of the burns. There was testimony from the treating physician that although no great harm actually came to A.J. as a result of the delay in seeking medical treatment, there was a potential for harm arising from the delay due to a serious risk of infection.

In a joint trial, both Johnson and Roark were found guilty of neglect of a dependent, a class D felony. IND. CODE 35-46-1-4 (Supp.1990).

I.

### Prosecutorial Misconduct

Roark and Johnson contend that the trial court erroneously allowed the prosecutor in his final argument to intimate that Roark intentionally burned A.J. by pouring hot water on her. They argue that the allegations constituted a charge of battery, which the evidence did not support and with which they were never charged. Thus, they contend that the prosecutor's allegations of the more serious charge of battery inflamed the jury and denied them a fair trial.

Roark and Johnson admit that they failed to object at trial to the statements made in the prosecutor's closing argument. A failure to preserve an error at trial constitutes a waiver of that error unless the error was fundamental. *Roberts v. State* (1981), Ind.App., 419 N.E.2d 803, 807 n. 4. Even constitutional errors are not necessarily fundamental errors and therefore may be waived if not properly preserved for appeal. *Foster v. State* (1985), Ind., 484 N.E.2d 965, 967. Fundamental error is error so blatant that it constitutes a denial of fundamental due process to the defendant. *Roberts, supra,* at 807. In determining whether an error is fundamental, we engage in a two-step analysis. First, we look at the character of the error and its effect on the trial as a whole, and second, we consider the function of the proper objection requirement. *Smith v. State* (1984), Ind., 468 N.E.2d 512, 518.

Here the prosecutor made several comments in his closing argument which pointed out the inconsistencies in the statements given by Roark to the police, and which indicated that the actual circum-

stances surrounding the incident were not clearly established. We cannot find that these statements denied the appellants a fair trial, even if they implied that Roark may have intended to injure A.J. The trial court has broad discretion with respect to the conduct of final argument. *Smith v. State* (1987), Ind., 516 N.E.2d 1055, 1065. The prosecutor's statements were fair comments on the evidence in light of the conflicting testimony of the defendants. Furthermore, the jury was instructed, and the prosecutor noted in his opening statement, that statements of counsel were not evidence and were not to be considered in making their decision. *See, Woodford v. State* (1986), Ind., 488 N.E.2d 1121, 1125. Finally, as discussed in Part III of this opinion, the evidence was more than ample to convict the defendants of neglect of a dependent.

With respect to the proper objection requirement, appellants made no objection whatsoever to the prosecutor's comments.

We therefore conclude that the prosecutor's comments did not taint the trial below, viewed as a whole, such as to deprive the appellants of any opportunity for a fair trial. *Roberts, supra,* at 808. Accordingly, we hold that the prosecutor's remarks do not constitute fundamental error.

## II.

*Failure to Give Tendered Instruction*

Roark also claims that the trial court erred in refusing to give his Proposed Instruction No. 1, which provided:

In order for an accused to be convicted of neglect of a dependent, that person must have assumed voluntarily the care of a dependent or already has [sic] the legal obligation to provide the care of a dependent. If the accused has voluntarily assumed the care of a dependent, once the individual who has legal obligation to provide the care of a dependent returns or re-assumes that duty, then there is no longer a legal obligation to provide the care from the person who originally voluntarily assumed the care of a dependent.

The mere moral obligation to obtain medical treatment for a child is not sufficient for you to find an accused guilty of neglect of a dependent.

Record p. 95.

In reviewing the refusal of a tendered instruction, we must determine whether the tendered instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions that are given. *Storey v. State* (1990), Ind., 552 N.E.2d 477, 482.

Roark concedes, as he must, that he voluntarily assumed care of A.J. when Johnson left the child with him. However, Roark contends that when Johnson returned he no longer had a legal obligation to provide medical care for A.J. He asserts that A.J. was not in distress until the following morning at eight o'clock a.m., when her burns were discovered to be visibly swollen and blistered, and therefore he could not be charged with neglect since the responsibility to acquire medical care had shifted back to Johnson.

What Roark fails to recognize is that even absent evidence of failure to provide immediate medical care, his creation of the situation which placed A.J. in danger, if he was subjectively aware of a high probability that such danger existed, was sufficient evidence of neglect under I.C. 35-46-1-4. *Howard v. State* (1985), Ind., 481 N.E.2d 1315, 1317. *Howard* involved facts nearly identical to those in this case. In reviewing the sufficiency of the evidence to sustain a conviction under IC 35-46-1-4, our Supreme Court stated:

The evidence showing neglect was the placing of children in a tub and leaving them there while knowing that very hot water was supplied to the tub and that the children were able to, and many times did, turn the water faucets themselves.

*Id.* at 1317.

Moreover, at least four hours expired between the time that A.J. was burned and the time that Johnson returned home. Roark's legal responsibility to seek neces-

sary medical attention for the dependent of whom he had assumed voluntary care extended at least until then.

Therefore, we cannot find that Roark's proposed instruction was supported by the evidence in the record, and we find no error in the trial court's refusal to give it.

### III.

### *Sufficiency of the Evidence*

■ Finally, Johnson and Roark contend that the evidence presented at trial was insufficient to support their convictions. In reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. We look to the evidence most favorable to the State, along with all reasonable inferences to be drawn therefrom, to see if there is substantial evidence of probative value to support the verdict. *Storey, supra* at 479.

### A. Roark's Conviction

■ The jury may have found Roark to be guilty of neglect for either (or both) of two reasons: 1) his creation of the situation whereby A.J. was burned; or 2) his failure to obtain prompt medical attention for A.J. Since we find that the evidence supporting the former is factually indistinguishable from that presented in *Howard v. State, supra,* we hold that there was sufficient evidence supporting Roark's conviction.

### B. Johnson's Conviction

■ Johnson argues that since A.J. suffered no great harm or long term effects from the delay in medical treatment, there was insufficient evidence to convict her of neglect of a dependent. This contention has no merit. Our Supreme Court has stated that in order to convict a person under IC 35–46–1–4, the State must prove that the actor subjected the dependent to a danger which was actual and appreciable. *State v. Downey* (1985), Ind., 476 N.E.2d 121, 123. This does not mean that the *injury* must be actual. In the present case, the treating physician testified that by waiting to secure medical treatment for nearly eight hours, Johnson subjected A.J.

to the risk of severe infection of the burned area where the blisters had already began to burst. It should have been apparent to Johnson that open wounds on a seventeen-month-old baby presented a risk of infection. The fact that the area fortuitously had not become infected is of no consequence under the statute where the danger of infection is both actual and appreciable.

To accept Johnson's argument would require us to conclude that the legislature intended to engage in a roulette game whereby conduct or inaction with respect to the care of a child, albeit heedless or neglectful, could continue unchecked so long as it did not happen to harm the child. This we will not do.

Affirmed.

HOFFMAN, P.J., and CONOVER, J., concur.