**Clifford ELSWICK, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 20A03–9005–CR–217.

Court of Appeals of Indiana, Third District.

Jan. 29, 1991.

Judith G. Menadue, Elkhart, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Clifford Elswick appeals his conviction for murder[1] and attempted murder,[2] for which he received sentences of 40 years and 30 years, respectively. He presents six issues for our review.

I. Did prosecutorial misconduct deny Elswick a fair trial?

II. Did the trial court rely on improper aggravating circumstances to impose consecutive sentences upon Elswick?

III. Was Elswick denied a fair trial because of the requirement that he wear leg restraints, or the procedure employed to handle items of physical evidence?

IV. Did the trial court erroneously instruct the jury?

V. Were Elswick's statements to police erroneously admitted into evidence?

VI. Were items of drug paraphernalia erroneously admitted into evidence?

We affirm.

On the evening of July 3, 1989, Thurman Pulluaim was fatally shot, and David Kyle was wounded. After the shooting, Kyle ran to a nearby home, where police were summoned.

Kyle made a statement to police indicating that he, Pulluaim and the assailant were en route to a party when the driver stopped the vehicle, shot Pulluaim in the head, and wounded Kyle as he tried to escape. Kyle gave a description of his assailant to police.

Elswick's father contacted police to report a missing gun and inform them that his son matched the description of Pulluaim's killer. Shortly thereafter, a gun was recovered from a pond near Mrs. Elswick's house trailer.

Elswick was subsequently arrested and tried for murder and attempted murder. At trial, Kyle identified Elswick as the man who had shot him. Elswick contended that the shootings were accidental.

## I.

### Prosecutorial Conduct

■ Elswick claims that he was denied a fair trial because the prosecutor elicited testimony from Kyle concerning prior drug transactions between Elswick and Pulluaim, and, in his closing argument, made certain "war on drugs" references. Elswick asserts that the collective references to drugs placed him in a position of grave peril to which he should not have been subjected, such that reversal is mandated.

1. IC 35–42–1–1.

2. IC 35–41–5–1.

*Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1089, *reh. denied.*

■ When presented with an allegation of prosecutorial misconduct, we must first determine whether the actions constituted misconduct. If so, we consider whether the defendant was thereby placed in a position of grave peril. We look to the probable persuasive effect of the misconduct on the jury's decision. *Id.* at 1089–90.

The testimony about which Elswick complains is as follows:

> Q. Where had you seen [Defendant]?
>
> A. In the projects.
>
> Q. And can you tell me, had you talked with him?
>
> A. No.
>
> Q. Just had seen him walking around down there?
>
> A. Driving around, yeah, I had talked to him, me and Thurman had talked to him because he had took something from Thurman one day, took some dope from Thurman and drove off in the car.
>
> Q. So you had had other transactions, you had seen other transactions between Thurman and this man before?
>
> A. No, I ain't seen, but Thurman told me. I was with Thurman when he stopped him that day.
>
> Q. That he purchased some dope before?
>
> A. Yeah.

*Record,* p. 212.

■ Elswick maintains that this exchange demonstrates that the prosecutor purposely elicited inadmissible hearsay testimony from Kyle. We note that the prosecutor initially asked Kyle what *he* had seen and done, requesting responses based on first-hand knowledge. However, the final question about which Elswick complains could only elicit testimony based on hearsay. Were we to assume for the sake of argument that posing this question constituted misconduct by the prosecutor, we would nevertheless be constrained to find that Elswick was not placed in grave peril

thereby. Defense counsel's objection to the foregoing question was sustained and the jury was immediately admonished to disregard the elicited testimony. *Record,* p. 213. A prompt admonishment is presumed to cure error resulting from the admission of improper evidence. The degree of specificity provided in the admonishment is within the discretion of the trial court. *Martin v. State* (1988), Ind., 528 N.E.2d 461, 464.

■ Elswick also complains that the prosecutor misled the jury by his closing argument references to combating drugs. However, he fails to demonstrate that he was prejudiced by unwarranted argument. Evidence had been presented that the charged crimes were committed by Elswick in order to obtain cocaine. The prosecutor was entitled to summarize the evidence of motive presented at trial.

## II.

### *Consecutive Sentences*

Elswick next alleges that the trial court relied upon improper aggravating circumstances to impose consecutive sentences upon him. The sentencing judge cited four aggravating circumstances supporting the imposition of consecutive sentences: (1) prior criminal offenses; (2) the immediate crimes were separate and distinct acts; (3) failure to order consecutive sentences would depreciate the seriousness of the crime; and (4) lack of remorse. *Record,* p. 536–8. Elswick challenges the findings of separate incidents and lack of remorse.

■ First, Elswick argues that the trial court could not properly consider his alleged lack of remorse. He refers us to *Dockery v. State* (1987), Ind.App., 504 N.E.2d 291. The *Dockery* court held that a defendant's protestations of innocence could not properly be used to aggravate his sentence, where the sole evidence of his guilt was the victim's testimony. The case at bar does not parallel *Dockery.* The evidence of Elswick's guilt did not consist solely of victim testimony; to the contrary, both physical evidence and evidence of in-

criminating statements made by Elswick were presented to the jury.[3]

■ Secondly, Elswick argues unpersuasively that the trial court's consideration of the existence of two separate offenses improperly considers a characteristic inherent in all crimes in which the trial court has authority to impose separate sentences. Where a defendant commits multiple, but distinct offenses, a sentencing judge may appropriately order consecutive sentences. *Little v. State* (1986), Ind., 501 N.E.2d 447, 450.

■ The trial court's consideration of the specified aggravating circumstances, including those attacked by Elswick, was a proper exercise of discretion. We will not alter a sentence which is within statutory limits, unless a manifest abuse of discretion is disclosed by the record. *Finch v. State* (1987), Ind., 510 N.E.2d 673, 676. We find no abuse of discretion in the trial court's imposition upon Elswick of the presumptive sentences for murder and attempted murder, to be served consecutively.

### III.

#### Courtroom Procedures

■ Next, Elswick argues that certain procedures employed during the conduct of his trial violated his constitutional right to a fair trial. He initially challenges the use of leg restraints. In overruling Elswick's objection, the trial court explained:

"Objection overruled; the Court finding that there is probable cause to believe that there are death threats emanating from the Defendant to witnesses who will testify in the cause and that there are additional charges pending against the Defendant ... for Conspiracy to Commit Murder against one of the witnesses to testify against him in the instant cause. The Court further finds that the Elkhart County Sheriff's Office has advised the Court that they are in fear of an attempted escape by the Defendant; the Court finding that the leg shackles cannot be viewed by the jurors; said leg shackles being hidden from view of the jurors under counsel table and Defendant's Motion to Remove Leg Shackles denied."

*Record*, p. 53–54.

■ As a general rule, a defendant is entitled to appear before the jury free from bonds or shackles. However, a trial court may, in its discretion, determine that restraints are necessary to prevent the escape of a prisoner, protect those in the courtroom or to maintain order. *Trotter v. State* (1990), Ind., 559 N.E.2d 585, 589. The reason(s) supporting the trial court's determination must be placed in the record. *Coates v. State* (1985), Ind.App., 487 N.E.2d 167, 169.

In the instant case, the trial court clearly articulated the reasons for Elswick's restraint. These findings were amply supported by the record which disclosed, *inter alia*, that Elswick had made attempts to procure a "hit man" to murder Kyle.

■ Elswick also argues that he was prejudiced by the procedure employed at trial to handle items of physical evidence. Rubber gloves were issued to members of the jury, for their use when handling such items as blood stained clothing and drug paraphernalia. Elswick asserts that the jury was permitted to infer that he suffered from a communicable disease, e.g., AIDS. He suggests that the evidence should have been sealed in plastic bags.

The record discloses no objection by Elswick to the jurors' use of gloves to handle evidence. Neither did Elswick request the containment procedure which he considers non-prejudicial, He may not be heard to complain upon appeal of alleged error not presented to the trial court for resolution. *South v. Colip* (1982), Ind.App., 437 N.E.2d 494, 498.

### IV.

#### Jury Instructions

■ Elswick next challenges the trial court's instruction of the jury. He first

---

**3.** Lucky Middaugh, an acquaintance of Elswick's testified that Elswick admitted to shooting "two black guys" and sought Lucky's assistance in disposing of a gun.

alleges that the court erred in refusing the following requested instruction:

### Other Criminal Conduct

Evidence has been introduced in this case that the defendant, Clifford Elswick, conspired to kill David Kyle in order to prevent David Kyle from appearing as a witness.

You are free to consider such evidence as bearing on the defendant's intent and credibility in the case before you for consideration. However, you may not draw from this evidence any inference of guilt with respect to the murder charge concerning the alleged victim Thurman Pulluaim.

Elswick contends that the jury may have convicted him for an extraneous reason, for example, to punish for other crime, or for being a "bad person," absent instruction on the limited function of other crimes evidence.

 In reviewing alleged error arising from a refused instruction, we consider whether the instruction is a correct statement of the law, whether there is evidence to support the giving of the requested instruction, and whether the substance of the tendered instruction is covered by another instruction. *Andrews v. State* (1989), Ind., 532 N.E.2d 1159, 1165, *reh. denied.*

The State contends that the tendered instruction correctly allowed consideration of the additional evidence tending to show Elswick's intent to kill Kyle. However, the State maintains that the record did not support the giving of the instruction in its entirety, as no attempt had been made to link the conspiracy evidence with Pulluaim's killing. We agree.

 Elswick also claims that the trial court instructed the jury in a manner which had a coercive effect on their reaching a verdict. The instruction provides in pertinent part:

If you should fail to reach a decision, this case will be left open and undecided.

Like all cases it must be disposed of at some time. Another trial would be a heavy burden on both sides.

There is no reason to believe that the case can be tried again any better or more exhaustively than it has been. There is no reason to believe that more evidence or clearer evidence would be produced on behalf of either side.

*Record,* p. 103.

Elswick has failed to preserve this issue for review, as no objection was made to the giving of this instruction at trial. *Baker v. State* (1987), Ind., 505 N.E.2d 49, 51. Moreover, he has demonstrated no reversible error in the giving of this instruction, as it was not given as a supplemental charge after jury deliberations had begun. *Broadus v. State* (1986), Ind., 487 N.E.2d 1298, 1303.[4]

 Elswick next argues that the trial court erred by instructing the jury as follows:

"You are instructed that where a specific intent is required to make an act an offense, such as in the charges preferred against the Defendant, the State is not required to make proof of specific intent by direct evidence for purpose and intent are subjective facts. That is, they exist within the mind of man, and since you cannot delve into a person's mind and determine his purpose and intent, you may look to all the surrounding circumstances, including what was said and done in relation thereto. The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crimes charged were committed by the Defendant with the degree of culpability charged in the Informations. You may infer that a person is presumed to intent [sic] the natural and probable consequences of his voluntary act, unless the circumstances are such to indicate the absences of such intent. A determination of the Defendant's intent may be arrived at by the

---

**4.** Although "Allen charge" language is not recommended, its use *before* a jury retires for deliberation does not constitute reversible error.

jury from a consideration of the Defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points.

When an unlawful act, however, is proved to be knowingly done, no further proof is need [sic] on the part of the State in the absence of justifying or excusing facts since you may presume a criminal intent from an unlawful act knowingly done.

*Record,* p. 88.

Elswick asserts that the foregoing instruction relieved the State of its burden of proof on an essential element of the charged crimes, in contravention of *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 and *Francis v. Franklin* (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344. The *Sandstrom* court rejected an instruction that the law presumes that a person intends the ordinary consequences of his voluntary acts. The *Francis* court rejected a mandatory, although rebuttable, presumption of intent based on the commission of an act.

 We must determine whether the instruction which Elswick challenges mandates a presumption or permits an inference. The relevant inquiry is whether a reasonable juror could have understood that the burden of proof on intent shifted to the defendant. If an instruction relieves the State of the burden of persuasion on an element of the charged offense, such presumption violates the Due Process Clause. However, instruction as to a permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury. *Francis, supra,* at 314–315, 105 S.Ct. at 1971–72.

An instruction substantially similar to that given at Elswick's trial was considered by our supreme court in *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, *reh. denied, U.S. cert. denied,* 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851. The *Van Orden* court held that the challenged instruction did not contain the limited and mandatory language rejected in *Sand-*

*strom,* and was properly given. *Id.* at 1161.

The instruction given at Elswick's trial employed more permissive language than that approved in *Van Orden.* The instant instruction employed the phrase *"You may infer"* immediately preceding the language of *Van Orden* which provides that a person is presumed to intend the natural and probable consequences of his voluntary act unless circumstances are such to indicate the absence of such intent.

Considered in its entirety, the instruction on intent given at Elswick's trial permits, rather than mandates, a conclusion that an actor intends the consequences of his acts. The State was not thereby relieved of its burden to prove Elswick's intent. No error in the use of this instruction has been demonstrated.

## V.

### Elswick's Statements

 Elswick next challenges the admission of statements he had made to police. Two days after the shooting, Elswick was questioned by an Elkhart County Sheriff's detective. He was advised that he was not under arrest, and was apprised of his *Miranda* rights. Elswick issued a statement concerning his knowledge of Pulluaim's death. After signing the formal statement, Elswick continued to speak with Detective Kenawell. Kenawell testified that Elswick made oral statements which were inconsistent with the written statement.

Elswick contends that Kenawell continued to elicit incriminating statements from him after he invoked his right to remain silent. Elswick maintains that he invoked this right by his statement that he "wasn't going to say certain things because that would be telling on himself." *Record,* p. 317.

 The State may offer as evidence an incriminating statement made by a defendant only when the accused knowingly, intelligently and voluntarily waived his right to remain silent prior to making the statement. *Miranda v. Arizona* (1966), 384

U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, *reh. denied.* A suspect may assert his right to remain silent at any time during interrogation. *Id.* at 445, 86 S.Ct. at 1612.

The record discloses that Elswick was advised of his right to remain silent and his right to have an attorney present. His initials appear beside a detailed advisory of *Miranda* rights. He declined the opportunity to have counsel present during his statement. All questioning ceased when Elswick indicated that he had changed his mind concerning representation. The record discloses no violation of Elswick's rights. His hesitancy to respond affirmatively to a particular question (i.e., whether or not he struggled with Kyle) cannot reasonably be construed as a request to terminate all questioning. Evidence of Elswick's statements to Kenawell were properly admitted into evidence.

## VI.

### *Admissibility of Drug Paraphernalia*

■ Lastly, Elswick argues that items of drug paraphernalia retrieved from his apartment were erroneously admitted into evidence. He asserts that they were irrelevant to the issues at trial.

■ A trial court has broad discretion in ruling on relevance of evidence. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 583, *reh. denied.* Evidence which legitimately tends to connect a defendant with a crime is admissible when a reasonable inference may be drawn therefrom. *Martin, supra,* at 464. Inasmuch as Elswick's drug use tended to establish a motive for the charged crimes, the paraphernalia had relevance to an issue at trial and was properly admitted into evidence.

Affirmed.

RATLIFF, C.J., concurs with opinion.

GARRARD, J., concurs in result with opinion.

RATLIFF, Chief Judge, concurring.

I cannot agree with the opinion of Judge Staton that the trial court's Final Instruction No. 7 was proper under the holding of our supreme court in *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, *cert. denied* 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851. In *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, the court struck down an instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts." That holding was reaffirmed in *Francis v. Franklin* (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 wherein the court also held that adding to such an instruction that the presumption could be rebutted did not cure the error.

The challenged instruction here appears to be based upon an instruction in *Van Orden* which our supreme court found not to be violative of the decision in *Sandstrom.* However, the instruction here, in my view, is suspect for it contains the language "You may infer that a person is presumed to intent [sic] the natural and probable consequences of his voluntary act, unless the circumstances are such as to indicate the absences of such intent." In my view, to say "you may infer that a person is presumed to intend," is tantamount to saying "you may presume," and that is proscribed by *Sandstrom.* Neither is this particular sentence saved by the statement "unless the circumstances are such as to indicate the absences of such intent", for that clause merely states the presumption may be rebutted, which, according to *Francis,* is no cure.

However, although the instruction is suspect, if not erroneous, and is inartfully worded and confusing, it does not constitute reversible error.

In order to preserve for appellate review an alleged error in instructing the jury, the appellant must make a specific objection to the instruction in the trial court. Failure to do so waives the issue on appeal. *Spindler v. State* (1990), Ind.App., 555 N.E.2d 1319. Neither may an appellant argue as error on appeal an issue different from the one raised in his objection at trial. *Ralston v. State* (1980), Ind.App., 412 N.E.2d 239, *trans. denied.*

Elswick's objection in the trial court to the instruction was as follows:

"Your Honor, we object to the instruction tendered by the state, *Van Orden* instruction which is instruction number [seven] in the Court's packet.

"The part of the instruction objected to is the last paragraph of the instruction which reads when an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the state in the absence of justifying or excusing facts since you may presume the criminal intent from an unlawful act knowingly done.

*"My objection is the stressing of the word "knowingly" when in this case we have the need and necessity to prove intentional act with respect to attempted murder, the intent to kill."*

Record at 509–510. (Emphasis added).

The objection stated by defense counsel clearly did not specifically raise the *Sandstrom* issue. In fact, it is clear the only issue raised in the objection was the stressing of the word "knowingly". Therefore, Elswick may not argue on appeal that the instruction violated the *Sandstrom* decision.

Neither was the giving of Instruction No. 7 fundamental error. Fundamental error is error so blatant it deprives the defendant of a fair trial. *Spindler; Johnson v. State* (1990), Ind.App., 555 N.E.2d 1362. However, just because an alleged error has a constitutional basis does not necessarily make it a fundamental error. *Id.*

Given the clear proof of guilt in this case, Elswick was not denied a fair trial by the giving of the challenged instruction. Therefore, it was not fundamental error to give such instruction, and Elswick's failure to make a sufficiently specific objection at trial waives any error. Further, even if there were error, the clear proof of guilt renders such error harmless.

Therefore, I concur.

GARRARD, Judge, concurring in result.

I concur except as to issue IV. On that issue I concur in result, and I agree with

Judge Ratliff that no objection sufficient to preserve the error was made at trial.