James **BLACKBURN**, Appellant
(Petitioner below),

v.

**STATE** of Indiana, Appellee
(Respondent below).

No. 21S00–8608–PC725.

Supreme Court of Indiana.

Feb. 24, 1988.

Susan K. Carpenter, Public Defender of Indiana, Hilary Bowe, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Petitioner James Blackburn appeals the denial of his Petition for Post Conviction Relief in the Fayette Circuit Court. Blackburn was charged on April 2, 1969 in the Franklin Circuit Court with murder in the first degree. On April 25, 1969 the cause was venued to Fayette County, and on November 7, 1969, following a jury trial, Blackburn was convicted of murder in the second degree. The conviction and sentence were affirmed on direct appeal. *Blackburn v. State* (1973), 260 Ind. 5, 291 N.E.2d 686, *appeal dismissed* 412 U.S. 925, 93 S.Ct. 2755, 37 L.Ed.2d 152. Blackburn's Petition for Post–Conviction Relief was filed on June 13, 1984 and, after a period of extended pleadings by both parties, the trial court denied the petition on January 28, 1986. Three issues are presented for our review in this appeal:

1. fundamental error in giving final instruction No. 17;
2. ineffective assistance of counsel; and
3. error in receiving into evidence Blackburn's pretrial statements to the police.

Blackburn also challenges the trial court's finding he was guilty of *laches* in bringing the post-conviction relief action. Since the State defended on all of the issues, however, and the trial court found against Blackburn on all of the above issues on the merits, the presentation of the *laches* issue is redundant and we will not consider it.

The facts are as follows:

On Sunday morning, March 30, 1969, Michael Sterwerf, a thirteen year old boy, was hunting with a friend in a wooded area near Metamora in rural Franklin County, Indiana, when they came upon a man (later identified as Blackburn) who threatened them with a rifle. The boys fled to the Sterwerfs' residence where they reported the incident to Michael's parents who began searching for the man. Approximately one hour after the initial encounter with the young boys, Mr. and Mrs. Sterwerf found Blackburn standing beside his car in the woods. Defendant threatened the couple with his rifle, causing them to flee by firing shots into the air in their general direction.

The Sterwerfs then summoned the police. Trooper Carl Wood, of the Indiana State Police, was the first officer to arrive. Accompanied by Mr. Sterwerf, Trooper Wood had completed a brief examination of the area surrounding Appellant's car when other police units arrived. At that time, Blackburn's location was unknown. After a cursory search of Defendant's vehicle, the officers advanced into the woods where a campsite was located. At this time shots were heard in the vicinity of Appellant's car and the officers sought cover and returned the fire which appeared to be coming from the top of a nearby hill.

At this time, Blackburn's probable identity was determined through a license plate check, and an examination of papers and effects in the vehicle. Lt.

Charles Short, who had known Blackburn as a juvenile, called out in an attempt to persuade Appellant to stop shooting and surrender. Blackburn then came down the hill, pleading that he not be shot. Only after defendant was in custody was it learned that Trooper Lietzen had been fatally wounded.

Appellant testified that he had gone to the woods, intending to stay for a two-week period, in order to think over his domestic and financial difficulties in solitude. He had at least six rifles in his possession which he had originally planned to sell. After his encounter with the boys and Mr. and Mrs. Sterwerf he moved to the crest of a hill where he constructed an "F" shape barricade. Appellant maintains that his only desire was to be left alone and that his only motive in firing was to drive off the Sterwerfs and the police. He also stated that he fired high in order to avoid hitting anyone and, due to the underbrush and trees, did not see officer Lietzen and was unaware that he had been shot. He pleaded not guilty by reason of insanity. *Blackburn,* 260 Ind. at 9–10, 291 N.E.2d at 689.

## I

■ Blackburn claims the court's instruction No. 17 was erroneously given since it had the effect of shifting the burden of proof to the accused or permitting a conclusive presumption to prove an element of the offense. Instruction No. 17 read:

It is not necessary that an express intention be proved, it may be inferred. The law presumes that every man intends the legitimate consequences of his own acts. The intent may be presumed and inferred from the result of the action. It is not always possible to prove an intent by direct evidence for intent is a subjective fact. In determining intent, you may look to all the surrounding circumstances, bearing in mind the presumption in law, that everyone of sound mind is presumed to intend the natural results of his voluntary acts.

Matters litigated on direct appeal are not available for review in post-conviction proceedings. *Douglas v. State* (1986), Ind., 490 N.E.2d 270, 271. Although Blackburn did not object to the giving of this instruction at trial and did not raise the question in this manner on direct appeal, this instruction was discussed on direct appeal on the issue of the refusal to give certain of Blackburn's tendered instructions. *Blackburn,* 260 Ind. at 15–19, 291 N.E.2d at 692–694. Nevertheless, since the language used in instruction No. 17 was the subject of *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, and *Francis v. Franklin* (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344, we will consider the issue here.

*Sandstrom* held that instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," was reversible error since the jury may have found Sandstrom guilty by interpreting the instruction as shifting the burden of persuasion to Sandstrom to disprove intent or as creating a conclusive presumption that could not be rebutted and required the State prove only the result element. The United States Supreme Court further considered the issue in *Francis v. Franklin,* stating that in analyzing an instruction for constitutionality, the court is to determine whether it creates a mandatory presumption or merely a permissive inference. *Francis,* 471 U.S. at 314, 105 S.Ct. at 1971. A mandatory presumption requires the jury to find the presumed fact if the predicate fact is proved, whereas a permissive inference only suggests that such conclusion may be made. *Id.* The *Francis* Court further acknowledged that while specific portions of an instruction may be infirm the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that the instruction would not create an unconstitutional presumption in a reasonable juror. *Francis,* 471 U.S. at 315, 105 S.Ct. at 1972. This court considered this issue in *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, *cert. denied* (1985) 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851. The challenged

portion of the instruction in *Van Orden* read:

Everyone is presumed to intend the natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the absence of such intent. A determination of the Defendant's intent may be arrived at by the jury from a consideration of the Defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points.

*Van Orden*, 469 N.E.2d at 1160. In *Van Orden* the limiting language was used but was further qualified by informing the jury that to determine purpose and intent they may look to all the surrounding circumstances including what was said and done in relation thereto. Thus, this court found the instruction did not have the limited and mandatory language of that rejected in *Sandstrom* and was properly given. *Id.* at 1161.

Here, in addition to instruction No. 17 the trial court gave preliminary instruction No. 8 which provided:

The State of Indiana is not required to make proof of felonious intent as a fact, by direct and positive evidence for, as a general rule, men who do or commit acts which the law denounces as public offenses do not proclaim in public the intent with which such acts are done. Therefore all that the State is required to do in such cases is to introduce such evidence on the trial of the cause as will satisfy the jury beyond a reasonable doubt, not only that the act, charged in the affidavit, was done by the defendant, but that it was done with the felonious intent charged in the affidavit.

The trial court also gave instruction No. 23 which provided:

I instruct you that without a criminal intent there is no crime under this indictment as charged, and without mental capacity for it there can be no criminal intent. The defendant's sanity or mental capacity to form the intent to kill, is in issue under this indictment and is an essential element of the offense with which he is charged. This element the state is bound to prove beyond a reasonable doubt, and not merely by a preponderance of the evidence. The evidence of defendant's sanity at the time of the commission of this offense need not predominate in weight over that going to show his sanity. And if there is a reasonable doubt in your mind of his sanity at the time of the commission of this offense, the law requires that you find him not guilty.

Instruction No. 17 informed the jury it was not necessary an express intention be proved but that it may be inferred. It further explained that in determining intent the jury may look to all the surrounding circumstances. The court's instructions properly informed the jury on the subject of intent.

## II

Blackburn claims the post-conviction court erred in finding that trial counsel's failure to investigate and present all available exculpatory evidence did not constitute ineffective assistance of counsel. Blackburn argues his counsel should have required ballistics and trajectory tests to determine whether it was possible that someone other than Blackburn fired the shot that killed the deceased officer. The effectiveness of Blackburn's trial counsel was determined by this court in Blackburn's direct appeal. *Blackburn*, 260 Ind. at 21–24, 291 N.E.2d at 696–697. This issue is therefore not reviewable in post-conviction proceedings. *Douglas*, 490 N.E.2d at 271. Further, Blackburn's claim is based on nothing more than speculation that further tests might reveal something favorable to him. No issue is presented meriting our consideration. *See Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Elliott v. State* (1984), Ind., 465 N.E.2d 707.

## III

Finally, Blackburn claims the post-conviction court erred in finding his statement to police while in custody was not

elicited in violation of his right to counsel. Following his surrender, Blackburn was arrested and taken by police to the State Police Post at Connorsville, Indiana. Officer Kleiman advised Blackburn of his constitutional rights from a standardized waiver of rights form. Blackburn acknowledged he understood his rights but stated he did not wish to sign the waiver form. Blackburn then asked a series of questions of Officer Kleiman regarding the appointment of an attorney. Officer Kleiman described the conversation as follows:

Q. What happened then?

A. Then he asked me if he would be allowed to have an attorney and I said yes. I have read this to you, that means you will be permitted too. And he said "Well when". I said "there's the telephone sitting at arms length on the desk" and he said "well who can I call?" I said "I'm not permitted to recommend attorneys to you. I can provide you with a phone book with a list of attorneys in it". He hesitated there a few minutes looking at the telephone and he said "When will the county appoint me an attorney?" and I said "At the time of your arraignment." And he said when will that be? And I said as soon as we go down to the jail and we get the paper work through and you appear in court. At this time I told him that I would like to hear his story as to what happened out there. Why he might have done this? Did he wish to give me a statement?

Q. What was his response?

A. He said yes that he would.

Q. Did he give you a statement?

A. He did give me a statement which I wrote down in longhand on a tablet....

The State contends Blackburn did not assert his right to have counsel present during custodial interrogation, but rather made only a general inquiry concerning obtaining counsel. The State further contends the statement given by Blackburn was not necessarily, under the circumstances, an inculpatory statement but was one in which Blackburn used the situation to state his version of what happened to his advantage. An examination of the entire record tends to support this version.

At trial, the defense made no objection to the admission of Blackburn's statement into evidence. In fact, the defense openly cross-examined Blackburn about the giving of the statement and the discussions between him and Officer Kleiman regarding employment of an attorney. Further, Blackburn took the stand in his own defense and discussed the events of that day, including the exchange of fire between Blackburn and the police that resulted in Officer Lietzen's death, in even more detail than was discussed in the statement. Blackburn's defense was a plea of insanity. Blackburn relied on a defense of admitting the occurrence of these events but maintaining the police officer's death was an unintentional result. Blackburn asserted his actions were the result of his mental condition and not an intent to kill anyone. The defense offered evidence that would show Blackburn was in a very troubled and emotional state that caused him to want to go off into the woods alone to think over his problems. There was evidence he had started to write a note to his wife, strongly inferring he had thoughts of committing suicide if he could not resolve the problems in his life as he saw them. His only desire was to be left alone and he fired at people only in an attempt to scare them away. He claimed he had attempted to aim the shots high into the air where they could not hurt anyone, although he admitted the position he was in could have resulted in some of the shots having been fired at a lower trajectory. He claimed he did not know Officer Lietzen and had no intention of hurting anyone. This is what he recounted in his statement to Officer Kleiman and about which he testified in detail on direct examination. Blackburn's activities on the hill and his arrest at the scene were reviewed by many witnesses, both lay persons and police officers. The evidence placed before the jury in Blackburn's statement was only cumulative to Blackburn's

direct testimony and the testimony of other witnesses in his defense. It clearly appears the strategy of the defense was bolstered by the admission of the statement.

Blackburn, in his direct appeal, claimed his counsel was incompetent and ineffective because he failed to object to the admission of his statement. In finding a failure to show ineffectiveness, Justice Arterburn, in a unanimous opinion by this court, held:

> As to counsel's failure to object to the admission in evidence of defendant's written statement, it should initially be noted that we are not directly faced with the question whether or not there was a violation of the *Miranda* rules in this case. The issue presented is whether assuming arguendo that there was such a violation, was appellant's trial counsel incompetent and ineffective to the extent requiring a reversal and new trial. We are of the view that counsel's failure to object in this instance was a matter of trial strategy, since the statement offered contains much that is favorable to the defendant in this case. It carefully recites the reasons why he was on the hill that day, and the statement that he did not intend to hurt anyone, but rather only scare them away, and that he didn't know anyone had been killed until much later. Trial counsel might well have though (sic) that such evidence would bolster the defense.

*Blackburn,* 260 Ind. at 22–23, 291 N.E.2d at 696. For these reasons we fail to see that Blackburn has carried his burden of establishing his grounds for relief on this issue by a preponderance of the evidence pursuant to Ind.R.P.C.R. 1, § 5. *Higgason v. State* (1982), Ind., 435 N.E.2d 558, 559.

Denial of post-conviction relief is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.