David Wayne BEECHER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 52A02–8902–CR–0067.

Court of Appeals of Indiana, Second District.

March 13, 1991.

Rehearing Denied April 29, 1991.

J.J. Paul, III, James H. Voyles, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

David Wayne Beecher appeals his convictions and sentence for two counts of murder.

We affirm.

## ISSUES

1. Whether Beecher was illegally detained by police so as to require the suppression of his statement and all evidence derived therefrom.

2. Whether the trial court erroneously instructed the jury.

3. Whether the evidence is sufficient to support Beecher's convictions.

4. Whether the trial court erroneously sentenced Beecher to consecutive sentences.

## FACTS

Beecher called the Indiana State Police post near Peru on Sunday, January 10, 1988 at 11:42 p.m. He stated he had just returned home and discovered the bodies of his parents, Wayne and Lydia Beecher, who had been shot. He was still talking on the phone when Trooper Richard Kirk arrived at the scene.

Beecher told police he had last seen his parents on Friday, January 8 at approximately 5:30 p.m. He stated he spent the weekend at his girlfriend's home and discovered his parents' bodies when he returned home, at approximately 11:30 p.m. Sunday.

The evidence indicates the murders most likely occurred on Friday evening. Wayne had a shopping list and coupons in his pocket and both he and Lydia were wearing their coats. The victims usually went gro-

cery shopping on Friday night. A pill case with compartments for each day of the week was found at the scene holding pills for Friday and Saturday. The days of the month prior to Friday had been crossed off a wall calendar. Wayne and Lydia were shot thirteen times by .22 caliber ammunition. A neighbor heard several rapid shots from what he believed was a .22 caliber rifle at about 5:40 p.m. Friday from the direction of the Beecher house.

## DISCUSSION

### I.

█ Beecher claims he was seized for questioning without probable cause in violation of the fourth amendment of the United States Constitution. Therefore, he argues, the trial court erred in refusing to suppress his statement and all evidence derived from it.

The appropriate inquiry into whether a person has been seized for fourth amendment purposes is whether, considering all circumstances, the defendant entertained a reasonable belief he was not free to leave. *Heald v. State* (1986), Ind., 492 N.E.2d 671. As a court of review we are limited to a determination of whether there is sufficient evidence to support the trial court's conclusion on this issue. *Heald.*

Citing *Zook v. State* (1987), Ind., 513 N.E.2d 1217, the trial court found Beecher voluntarily accompanied the police and voluntarily gave a statement. Thus, the trial court ruled, probable cause was not required. The evidence supports this conclusion.

When Trooper Kirk arrived at the Beecher house he helped Beecher outside because Beecher stated he needed air and wanted to get away from things. He appeared to be getting sick. The house was secured and only investigators were allowed inside. Because it was very cold outside Beecher was placed inside an ambulance while officers continued their investigation.

The police later wanted a recorded statement from Beecher. Beecher testified he was very upset and did not wish to return to the house. Because neither the ambulance nor the police cars were equipped to record a statement, the police asked Beecher to accompany them to the state police post a few miles away. Trooper Kirk testified that he did not believe Beecher was able to drive safely because of his condition.

Although officers helped Beecher from the ambulance to a police car, he was not handcuffed, held at gunpoint or restrained in any way. He sat with Deputy Rodney Mygrant, whom he had known for several years, in the front seat of the deputy's police car. No other officers rode in the car. No guns were displayed and many of the officers were not in uniform. Although Beecher testified he did not believe he could refuse to go to the police post, the trial court found his belief was not reasonable; he also testified he voluntarily went with the police to assist them in their investigation. Record at 1835–36.

At the post Beecher was given coffee and seated in an interview room. He testified he was not coerced to give the statement. At Beecher's request, Beecher spoke with Trooper Carlos Pettiford after his interview. After the interview Beecher remained in the interview room until his relatives decided who would take him home. The door between the room and the post's office was left open. Indiana State Police Sergeant Kenneth Roland testified no one was guarding Beecher and Beecher could have left if he so desired. He stated if the police intended to confine Beecher, he would have been placed in a holding cell located a few feet away and not left in the interview room with access to the office.

While Beecher was still at the police post, Wayne Beecher's wallet was discovered at his girlfriend's home and Beecher was placed under arrest.

The evidence is more than adequate to support the trial court's ruling that Beecher voluntarily accompanied police and gave a statement. Therefore, probable cause was not required and the trial court properly denied Beecher's motion to suppress.

## II.

■ Beecher claims the trial court's final instruction number 15 created an impermissible presumption which relieved the State of its burden of persuasion and contravenes *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 and *Francis v. Franklin* (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344.

The questioned instruction reads:

You are instructed that where a specific intent is required to make an act an offense, such as in the charge preferred against the defendant, the State is not required to make proof of specific intent by direct evidence, for purpose and intent are subjective facts. That is, they exist within the mind of man, and since you cannot delve into a person's mind and determine his purpose and intent, you may look at all the surrounding circumstances, including what was said and done in relation thereto. The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the Defendant with the degree of culpability charged in the Information. Everyone is presumed to intend the natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the absence of such intent. A determination of the Defendant's intent may be arrived at by the jury from a consideration of the Defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points.

When an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the State in the absence of justifying or excusing facts, since the law presumes a criminal intent from an unlawful act knowingly done.

Record at 461.

This same instruction was considered by the supreme court in *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, *cert. denied* (1985), 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851. In *Van Orden*, decided before *Francis*, our supreme court held the subject instruction did not have the limited and mandatory language rejected by *Sand-strom* and, therefore, the instant instruction was properly given. After *Francis* that court found a similar instruction did not violate a defendant's due process rights.

It is not necessary that an express intention be proved, it may be inferred. The law presumes that every man intends the legitimate consequences of his own acts. The intent may be presumed and inferred from the result of the action. It is not always possible to prove an intent by direct evidence for intent is a subjective fact. In determining intent, you may look to all the surrounding circumstances, bearing in mind the presumption in law, that everyone of sound mind is presumed to intend the natural results of his voluntary acts.

*Blackburn v. State* (1988), Ind., 519 N.E.2d 554, 556. Although at best the instruction is inartfully worded and confusing, and its use should be discouraged, a reasonable juror would not have understood the subject instruction considered in its entirety, along with the instruction that "[t]he Defendant is not required to present any evidence to prove his innocence or to prove or explain anything[,]" Record at 409, 458, to have shifted the State's burden of proof to Beecher.

## III.

■ Beecher claims the evidence is insufficient to support his convictions. This court will not reweigh the evidence or judge the credibility of witnesses. We will review the evidence most favorable to the verdict and any reasonable inferences which may be drawn therefrom. If there is evidence of probative value from which a reasonable trier of fact could find the existence of each element beyond a reasonable doubt the conviction will be affirmed. *Bartruff v. State* (1990), Ind., 553 N.E.2d 485.

The evidence shows Beecher was the last person to see his parents alive. His truck was seen at the house after a neighbor heard a series of gun shots from the direction of the house. Beecher was seen at or near the home on both Saturday and Sunday. There was no forcible entry and a rifle of the same caliber used to kill the victims was missing from the home. A

fisherman later found the rifle in the Mississinewa River. Wayne had cashed his paycheck on Friday and received $149.00 cash back. Beecher who was unemployed, spent substantial money over the weekend and had $102.00 cash in his possession when he was arrested. Wayne's wallet was discovered at his girlfriend's house where Beecher spent the weekend. It contained no cash and was found in the trash in an empty coffee bag which Beecher had bought. Finally, investigators testified that under the lighting conditions described by Beecher, Beecher could not have seen the bodies from the kitchen as he said he did. Although the evidence against Beecher is circumstantial, it is sufficient to support Beecher's murder convictions. *See Allen v. State* (1986), Ind., 496 N.E.2d 53.

### IV.

Beecher was sentenced to two thirty-year terms of imprisonment to be served consecutively. He claims the trial court erred in assessing aggravating factors and in mitigating the individual sentences and yet ordering them served consecutively.

### A.

■ Beecher argues three of the aggravating factors are restatements of one meaningful factor. We disagree because we perceive the victims being Beecher's parents as distinct from the "cold-blooded" aspect of the shooting occurring in a face to face manner, which in turn is distinct from the multiple (14) shots that were "individually and consciously fired." Record at 636. The fourth factor, the extensive cover-up, Beecher concedes is a valid factor. These four factors, without regard to the fifth factor, sufficiently support the trial court's exercise of sound discretion in ordering consecutive sentences.

■ Next, Beecher argues the court failed to enumerate a mitigating factor supported by the record, the evaluation of the Department of Correction:

"For the most part one could expect highly conforming and socially conventional behavior from this individual. He might even impress others as being pollyannish. Neither testing or interview revealed any psychotic trends."

Record at 602. The trial court has discretion to determine whether any particular factor is indeed mitigating. The opinion that Beecher is not psychotic is not necessarily mitigating; many crimes are committed by only anti-social personalities. Further, most behavior is not all behavior; and, finally, the opinion is only an opinion.

### B.

■ Beecher also argues the trial court erred when it both mitigated and enhanced his sentences. The trial court enumerated five mitigating factors which it considered to mitigate the individual sentence and then enumerated five aggravating factors it used to order Beecher's individual sentences served consecutively. A trial court balances mitigating and aggravating factors whether it concludes the aggravating factors outweigh the mitigating factors or whether it considers the mitigating factors alone, and mitigates part of the sentences, and then considers the aggravating factors alone and enhances part of the sentences. The result is the same.

Judgment affirmed.

BARTEAU and GARRARD, JJ., concur.