Melvin HOLLIDAY, Appellant–
Defendant Below,

v.

STATE of Indiana, Appellee–
Plaintiff Below.

No. 20A03–9202–CR–42.

Court of Appeals of Indiana,
Third District.

Oct. 26, 1992.

Transfer Denied Dec. 23, 1992.

Brent Westerfeld, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Melvin Holliday appeals his conviction of burglary,[1] a Class B felony. Holliday raises three issues for our consideration, restated as:

I. Whether the trial court erred by admitting hearsay statements involving a prior unrelated crime purportedly committed by Holliday.

II. Whether the trial court committed fundamental error when it instructed the jury that a defendant is presumed sane.

III. Whether a jury instruction on the State's burden of proof violated Holliday's due process rights.

We affirm.

The evidence favorable to the conviction indicates that on April 3, 1990, Stephen Hunter stepped out of the shower in his Elkhart, Indiana apartment and heard someone knocking at his door. Hunter, still in the bathroom, did not answer the door. A few moments later, Hunter heard something hit his apartment door, and the door opened. After the door closed, Hunter looked out his apartment window and saw two men talking outside. Shortly thereafter, one of the two men returned to the apartment and looked through some of Hunter's belongings. Hunter confronted the intruder, who quickly fled the scene. Hunter later identified Holliday as the intruder. Holliday took Hunter's checkbook, and wrote seven checks on the account without Hunter's permission. After being taken into police custody, Holliday gave a statement in which he admitted entering the apartment and stealing Hunter's checkbook. Before trial, Holliday filed a notice

of intent to interpose an insanity defense. After a three day trial, the jury found Holliday guilty of burglary, but mentally ill. Holliday appeals.

I.

*Hearsay Evidence*

During rebuttal, the State presented the testimony of police detective Brett Coppins. Over Holliday's hearsay objection, Coppins testified that an informant and one of Holliday's relatives advised Coppins of Holliday's participation in a prior unrelated robbery. Holliday claims the State offered Coppins' testimony as evidence of the truth of the third parties' statements, and his inability to confront and cross-examine these third parties resulted in a deprivation of his constitutional rights under the Sixth Amendment. The State contends that the testimony was offered to rebut Holliday's insanity claim and to explain the actions of an arresting police officer; therefore, the testimony was not hearsay.

Hearsay is an out-of-court statement offered in court to prove the truth of the matter therein. *Williams v. State* (1989), Ind., 544 N.E.2d 161, 162, *reh'g denied*. Out-of-court statements introduced primarily to explain why a particular course of action was taken during a criminal investigation are not offered for the truth of the matter, and are not, therefore, hearsay statements. *Johnston v. State* (1988), Ind., 530 N.E.2d 1179. Moreover, when the defendant asserts the insanity defense, evidence otherwise inadmissible may be proper to bear upon the credibility of the conclusions drawn by doctors or for relevant observations of demeanor. *Benefiel v. State* (1991), Ind., 578 N.E.2d 338, 346, and *Rogers v. State* (1987), Ind., 514 N.E.2d 1259, 1261. However, when reviewing the admission of this evidence, the reviewing court requires "a reasonable level of assurance that such testimony was not offered by the proponent nor received by the trier of fact as evidence of the truth of the third party's statement." *Williams, supra,* at 162–63. Despite Holliday's as-

1. IND.CODE 35–43–2–1 (1988).

sertions to the contrary, it is clear that such assurance was present in this case.

Holliday analogizes his case to *Williams, supra,* which is distinguishable from the present case. In *Williams,* the officer's statements went to the issue of whether Williams was involved in the charged crime, and they supported the victim's trial testimony as to the perpetrator's identity. *Supra,* at 163. In the present case, the statements of the informant and Holliday's relative neither addressed the issue of the perpetrator's identity in the April 3 burglary, nor corroborated Hunter's testimony that Holliday was the perpetrator of the April 3 burglary.

■ The statements made here are similar to the statements made in *Johnston,* where the statements were offered to "explain how and why the ... transactions ... were initiated." *Supra,* at 1181. In the present case, the statements were not offered to prove that Holliday committed the purse snatching on March 8, but to explain how Coppins was placed in a position to apprehend Holliday on March 8. The March 8 encounter served as an additional basis of personal knowledge for Coppins to observe Holliday's physical demeanor and were offered to rebut the medical experts' conclusions. *Benefiel, supra,* at 346, and *Rogers, supra,* at 1261.

■ The admission of the statements of the informant and of Holliday's relative did not deny Holliday his right to confrontation, because Holliday was not on trial for the March 8 robbery. *Johnston, supra,* at 1181. By raising the insanity defense, Holliday made Coppins' March 8 observations relevant. There was a reasonable level of assurance that Coppins' testimony was offered to explain Coppins' actions and not for the truth of the matters asserted therein.

■ Second, Holliday argues "[t]here is no absolute assurance that hearsay statements of third parties were considered for any purpose other than the truth of the matter asserted in their out-of-court statements." Brief of Appellant at 10. The jury received a limiting instruction as to the use of this testimony.[2] On appeal, it is presumed that the jury obeyed the trial court's instructions. *Chandler v. State* (1991), Ind., 581 N.E.2d 1233, 1237. Because the statements here are like those in *Johnston, supra,* the limiting instruction provides reasonable assurance that the jury did not receive the testimony about the March 8 robbery as evidence of the truth of the matter asserted therein.

■ Third, Holliday argues that the limiting instruction did not admonish the jury against considering the hearsay statements of Holliday's relative and the informant as evidence of the proof of the matter asserted therein. The jury is presumed to follow the court's instructions. *Chandler, supra,* at 1237. By reviewing the complete language of the limiting instruction, it explains to the jury that the testimony is to be considered not for its "truth or falsity, but only to show what the officer did on a particular occasion, or how he arrived at, in this case, arresting the defendant." *Record,* p. 312. The instruction reasonably explains to a jury the proper use of the information making up Coppins' testimony about the March 8 arrest.

Fourth, Holliday argues that the limiting instruction he requested conflicts with the Court's Final Instruction No. 40,[3] permitting the jury to improperly use Coppins' statements to conclude that Holliday committed the March 8 robbery. On appeal, the court presumes that the jury obeyed the trial court's instructions. *Chandler, supra,* at 1237.

The limiting instruction solely addressed Coppins' testimony regarding the events

2. "THE COURT: Jury is admonished that the testimony which the witness is giving now is not being offered for the truth or falsity, but only to show what the officer did on a particular occasion or how he arrived at, in this case, arresting the defendant." *Record,* p. 312.

3. "You have received evidence that the Defendant may have committed other crimes. You are instructed that this evidence can only be considered by you in deciding the issue of insanity." *Record,* p. 101. This instruction was submitted by Holliday and modified by the trial court. *Record,* p. 59.

leading up to Holliday's arrest on March 8. Final Instruction No. 40 encompassed the other three crimes discussed by Coppins during his rebuttal testimony. We do not conclude that the jury was unable to perceive the limiting instruction an exception to the general rule stated in the final instruction. The instructions are not contradictory.

## II.

### Presumption of Sanity

■ Holliday alleges error in the Court's Final Instruction No. 12, where the jury was instructed that "every person is presumed to be sane." *Record*, p. 72. Because Holliday failed to make a timely objection to this instruction, he raises this issue on appeal as fundamental error. Holliday argues two errors: first, Instruction No. 12 misled the jury with respect to Holliday's insanity defense; and second, the jury received no instruction explaining how the presumption of sanity could be overcome. Fundamental error requires: (1) the error to be a blatant violation of basic principles; (2) the harm or the potential harm to be substantial; and (3) the resulting error denied the defendant fundamental due process. *Okuly v. State* (1991), Ind.App., 574 N.E.2d 315, 316, *trans. denied.*

■ The first prong of the fundamental error test requires the error to be a violation of basic principles. Both parties agree it was error for the jury to be instructed as to the presumption of sanity after Holliday produced some evidence on that issue. *See Young v. State* (1972), 258 Ind. 246, 280 N.E.2d 595, *reh'g denied. Contra Corbin v. State* (1990), Ind., 563 N.E.2d 86, 91, where the court stated that *Darby v. State* (1987), Ind., 514 N.E.2d 1049, "found the presumption of sanity ... instruction to be proper." In *Darby,* the defendant raised the insanity defense, presented evidence, and an instruction was given which stated, "[t]here is a presumption in the law that all persons are sane...." *Supra,* at 1055. We will accept for argument, based on *Young,* that the instruction was erroneous. *Supra,* at 597–98.

■ If the instruction error amounts to a blatant violation of basic principles, it would justify reversal. To justify reversal, the error must be of such a nature that the whole charge of which it forms, a part misleads the jury as to the law of the case. *Sturgeon v. State* (1991), Ind.App., 575 N.E.2d 679, 680.

■ When examining an error in a particular jury instruction, the instructions should be read as a whole and construed together. *Darby, supra,* at 1055. Final Instruction No. 3 stated, "In considering any one instruction, you should construe it in connection with, and in light of, every other instruction given." *Record,* p. 62. Therefore, Instruction No. 12 does not stand alone, but it must be considered in light of all other instructions.

■ Holliday alleges the jury was misled as to his insanity defense. In Final Instruction No. 9, the jury was instructed:

\* \* \* \* \* \*

However, on the issue of insanity, the burden rests upon the Defendant to prove to each juror by a preponderance of the evidence that he was not sane at the time of the charged offense.

The term preponderance of the evidence means that you must be convinced from all of the evidence in the case that the Defendant was more probably insane than sane at the time of the act charged.

*Record,* p. 69. This instruction correctly explained Holliday's burden of proof to establish his insanity defense. When this instruction and the presumption instruction are construed together, the jury was not misled as to the law of the case and the error was not a blatant violation of basic principles.

■ Second, Holliday argues error because the jury was not instructed as to how the legal presumption of sanity could be overcome by the evidence. The instructions will be viewed as a whole and construed together. *Darby, supra,* at 1055. Final Instruction No. 7 explained:

\* \* \* \* \* \* \*

However, even if the State did prove each of the above elements beyond a reasonable doubt, and the Defendant also proved by a preponderance of the evidence that at the time of the offense, as a result of a mental disease or defect, he was unable to appreciate the wrongfulness of his conduct at the time of the offense, then you should find the Defendant not responsible by reason of insanity at the time of the offense.

\* \* \* \* \* \*

*Record,* p. 66. Instruction No. 7 explained to the jury the effect of Holliday's satisfaction of his burden of proof. The jury was appropriately instructed that the presumption of sanity was rebuttable.

■ When Instruction No. 12 is read with the other instructions, the jury was not misled as to the law of the case, and the instruction did not create an irrebuttable presumption of sanity. The error caused by Instruction No. 12 was corrected by other instructions and was not a blatant violation of basic principles.

Because the first prong of the fundamental error test is not satisfied, it was not fundamental error for the trial court to give Instruction No. 12.

### III.

#### *Burden of Proof*

Holliday next argues that the trial court erred when it instructed the jury in the Court's Final Instruction No. 23 that:

> You are instructed that where a specific intent or kind of culpability is required to make an act an offense, such as in the charge preferred [sic] against the Defendant, the State is not required to make proof of specific intent by direct evidence, since purpose and intent are subjective facts. That is, they exist within the mind of man, and since you cannot delve into a person's mind and determine his purpose and intent, you may look at all the surrounding circumstances, including what was said and done in relation thereto. The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the Defendant with the degree of culpability charged in the information. You may, however, infer that every person intends the natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the absence of such intent. A determination of the Defendant's intent may be arrived at by the jury from a consideration of the Defendant's conduct and the natural and usual consequences to which such conduct logically and reasonably points.

> Where an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the State in the absence of justifying or excusing facts.

*Record,* p. 83.

Holliday alleges this instruction violated his due process rights. Because Holliday failed to make a timely objection to this instruction, he raises this issue on appeal as fundamental error. Holliday presents four arguments to establish this instruction as fundamental error: (a) the instruction relieved the State of its burden to prove the essential element of intent; (b) the final paragraph of the instruction automatically shifted the burden of production to Holliday after the State showed a knowing breaking and entering; (c) the instruction contained infirm language not corrected by other instructions; and (d) there was cumulative error caused by this instruction and the presumption of sanity instruction. Fundamental error requires: (1) the error to be a blatant violation of basic principles; (2) the harm or the potential harm to be substantial; and (3) the resulting error denied the defendant fundamental due process. *Okuly, supra,* at 316.

#### (a)

■ Holliday asserts that the foregoing instruction is a blatant violation of basic principles because it relieved the State of its burden of proof on the intent issue, an essential element of the crime, in contraversion of *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, and *Francis v. Franklin* (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344. The

court in *Sandstrom* rejected an instruction that presumes a person intends the ordinary consequences of his voluntary actions. The court in *Francis* rejected a mandatory, although rebuttable, presumption of intent based on the commission of an act. *Elswick v. State* (1991), Ind.App., 565 N.E.2d 1123, 1129, *trans. denied.*

 The relevant inquiry is whether the challenged instruction creates a presumption or permits an inference. If the instruction relieves the State of its burden of persuasion on an element of the charged offense, it is violative of the Due Process Clause. Permissive inference instructions only violate the Due Process Clause if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury. *Elswick, supra,* at 1129, citing *Francis, supra,* 471 U.S. at 314–315, 105 S.Ct. at 1971–72.

An instruction substantially similar to that given at Holliday's trial was considered in *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851. The court in *Van Orden* held the challenged instruction did not contain the limited and mandatory language rejected in *Sandstrom* and was properly given. *Id.* at 1161.

Instruction No. 23 used more permissive language than accepted in *Van Orden.* Holliday's instruction used the phrase "You may, however, infer" immediately proceeding the language approved by *Van Orden, supra,* at 1160. *Elswick, supra,* at 1129. Considering the intent instruction in its entirety, it permits, rather than mandates, a conclusion that an actor intends the consequences of his acts. The instruction did not relieve the State of its burden of production on the intent issue. *Id.* Because it was not error to give the jury this intent instruction, it was neither blatant error, nor fundamental error.

(b)

 Holliday's next argument contends that the final paragraph of Instruction No. 23 impermissibly allowed the burden of production to shift to Holliday to disprove the specific intent issue after the State had presented evidence that the breaking and

entering was done knowingly. Holliday misreads this instruction. This Court in *Warner v. State* (1991), Ind.App., 577 N.E.2d 267, 271, where an instruction contained an identical final paragraph, stated:

> "This language merely informs the jury that, once the State has established the culpability element of the offense, it need not put on additional evidence unless facts are elicited justifying or excusing the criminal act, whether these facts are elicited by the State or [D]efendant. The instruction clearly does not require the [D]efendant to do anything."

As a whole, the instruction does not shift the burden to Holliday or amount to a blatant error violating basic principles. Holliday fails to demonstrate fundamental error in this argument.

(c)

 Holliday also argues that Instruction No. 23 contains infirm language which was not corrected by other instructions. In particular, Holliday cites to *Beecher v. State* (1991), Ind.App., 567 N.E.2d 861, 864, *reh'g denied,* and *Blackburn v. State* (1988), Ind., 519 N.E.2d 554, 556–557, *reh'g. denied.* We will assume, *in arguendo,* Instruction No. 23 contains infirm language or error and will search for a blatant violation of basic principles.

Holliday, first, argues the jury was not instructed as in *Beecher* that "[t]he Defendant is not required to present any evidence to prove his innocence or to prove or explain anything". *Supra,* at 864. In Final Instruction No. 11, the jury was instructed "[t]he Defendant is not required to present any evidence to prove his innocence. However, in this case the Defendant has the burden of proving that he was insane at the time of the act charged by a preponderance of the evidence." *Record,* p. 71. This language accurately states the law after the insanity defense has been raised and performs the same remedial function as the language quoted from *Beecher. Supra,* at 864. Therefore, the alleged infirmity has been corrected by other instructions.

Holliday's second argument is the jury was not expressly instructed that the intent element was an essential element that the State "is bound to prove beyond a reasonable doubt." *Blackburn, supra,* at 557. Final Instruction No. 23 states that, "The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the Defendant with the degree of culpability charged in the information." *Record,* p. 83. Also, Final Instruction No. 7 states that "[t]o convict the Defendant, the State must have proved beyond a reasonable doubt each of the following elements: the Defendant; (1) Knowingly, . . . ." *Record,* p. 66. It is clear from the instructions given, the jury was expressly instructed that the intent element was an essential element of the State's case to be proven beyond a reasonable doubt.

The alleged infirmities in Instruction No. 23 were corrected by other instructions. There was no blatant violation of basic principles. Therefore, the alleged infirmities do not amount to fundamental error.

(d)

Holliday's final argument is that Final Instruction No. 12 coupled with Final Instruction No. 23 creates fundamental error because these two instructions caused the proceedings as a whole to lack the necessary indicia of fairness. Final Instruction No. 12 was not a blatant violation of basic principles because any error was remedied by the other instructions. *See* Issue II, *supra.* Moreover, it was not error for the trial court to give Instruction No. 23 to the jury. Holliday has demonstrated no fundamental error. Holliday's due process rights were not violated by Instruction No. 23.

We affirm.

HOFFMAN, J., concurs.

MILLER, J., concurs in result and files separate opinion.

MILLER, Judge, concurring in result.

I agree with the result reached by the majority, although I feel that Officer Cop-

pins' testimony was unnecessarily detailed. Holliday claimed in this case that medication he was taking for his mental illness always made him drowsy, lethargic, and essentially incompetent; thus, he did not know or understand what he was signing when he signed his confession. Coppins could have testified about his contact with Holliday a month earlier (when the evidence established he was also under medication) by describing it as an investigation *without* revealing that two witnesses had positively identified Holliday as the person committing the act.

As stated by the majority, sometimes it is necessary to admit some hearsay material to explain how and why transactions were initiated. But this rule should not be used as an excuse to permit unnecessary, damaging hearsay testimony.

In this case, I believe the error was harmless. Holliday took the stand and it became apparent from his testimony that he had an extensive criminal record. In addition, the evidence appears to be overwhelming and the jury, in fact, found Holliday to be mentally ill.