**Floyd WALKER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 20S00–9212–CR–1040.**

Supreme Court of Indiana.

Sept. 28, 1993.

Susan K. Carpenter, Public Defender, Kenneth L. Bird, Deputy Public Defender, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A grand jury indicted appellant for the murders of May Doria Miller and Frank George Miller. Appellant filed a plea in abatement contesting the grand jury proceedings. However, the trial court upheld the grand jury.

A jury trial resulted in appellant being convicted on both murder charges. He received two life sentences.

The facts are: The partially decomposed bodies of Mr. and Mrs. Miller were found along the Elkhart River east of New Paris in Elkhart County. Each were found to have died from bullet wounds to the head. Witnesses had testified they had seen Mr. and Mrs. Miller fishing in that area before their death.

Later, Mr. Miller's billfold was found along County Road 44 west of Benton. The billfold contained Mr. Miller's personal papers but no currency. Awalt Dallman and his son Arnold testified they were in the area target practicing when they heard shots nearby. Shortly after hearing the shots, they saw appellant come out of the woods and they asked him what he had been shooting. He said, "Squirrels and crows." The Dallmans testified that appellant appeared to be very nervous and upset. This encounter occurred between 10:00 and 11:30 a.m. on September 22, 1959.

At approximately noon that same day, appellant bought jewelry at Robert's Jewelers in Goshen, Indiana, paying with a twenty dollar bill. A few days later, his mother went to the jeweler because she was concerned about where appellant had obtained the money for the purchase. His mother then told police officers that appellant had made the jewelry purchase, that she was afraid he might have stolen money, and that he might be in some kind of trouble. She asked that the officers talk to appellant and find out where he had obtained the money.

The officers' conversations with appellant led to the disclosure that he had been shooting a rifle along the river bank. When they learned of the death of Mr. and Mrs. Miller, they questioned appellant about it. They went to appellant's home where his mother permitted them to take his rifle and shells and to talk further with appellant. During the conversation, appellant told the officers that he had shot the people but that it was accidental. They then went to the general location of the shootings, and appellant directed the officers to the place where the bodies were found.

At this point, appellant changed his story from an accidental shooting to a claim of self-defense. He said he shot the man a second time to put him out of his misery. He told the officers that he had thrown the man's billfold away and took them to the place where the billfold had been found. He first stated that he was shooting at crows and Mrs. Miller stood up in his line of fire. Then he said he shot her while she was sitting.

Appellant's statements were reduced to writing and were signed by him. Appellant invoked the defense of insanity and a psychiatric examination disclosed that he was brain damaged at birth, was both retarded and mentally ill, and had a history of bizarre behavior including the torturing and killing of animals.

■ Appellant claims the evidence shows that his mental health was so impaired that he should not have stood trial. The trial court appointed Dr. Armstutz and Dr.

Bender to examine appellant. A hearing was held to determine his competency to stand trial. Dr. Armstutz testified that appellant knew the charge and the penalty, that he was not psychotic and that he had not lost touch with reality. He did state that while appellant understood the words of the penalty, he did not seem to have a clear comprehension of its meaning.

Dr. Bender testified that appellant represented a "borderline case." He felt appellant had comprehension sufficient to understand the proceedings in order to make his defense. Dr. Bender did indicate that he did not agree with the legal definitions of insanity and their application in criminal cases. However, he stated this was a personal opinion, and it did not influence his findings in the case.

Although both doctors found appellant to be mentally ill, they did supply the trial court with sufficient evidence to find that although mentally ill the appellant had sufficient comprehension to understand the charges and to be able to stand trial. We previously have held that a determination of competency will be reviewed only for an abuse of discretion and that we will not reweigh the evidence heard by the trial court. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723; *Ferry v. State* (1983), Ind., 453 N.E.2d 207. The trial court did not err in permitting appellant to stand trial.

■ Appellant claims there was sufficient evidence to support his plea of not guilty by reason of insanity. Although, as stated above, appellant was found to be retarded and suffering from mental disease, there nevertheless was evidence that he responded coherently, that he was able to take officers to the place where the killings took place, and that he was able to direct them to the place where he had thrown the billfold. Thus, there was evidence from which the jury could find comprehension. We previously have held that the existence of mental disease or deficiency does not *ipso facto* render a defendant legally insane so as to excuse him from the commission of a crime. *Taylor v. State*

(1982), Ind., 440 N.E.2d 1109. There is sufficient evidence in this record to support the jury's verdict.

■ Appellant contends the trial court erred when it did not conduct separate hearings on each of the separate charges. This issue was not raised at the trial court. Thus, it is waived. *Ingram v. State* (1989), Ind., 547 N.E.2d 823. However, notwithstanding the waiver, the case which appellant relies upon, *Smith v. State* (1983), Ind., 443 N.E.2d 1187, is not applicable here. In that case, it was held that the court could not take judicial notice of the testimony or determination of the competency hearing in a companion case. However, we do not have the issue of a companion case here. The murder charges as to Mr. Miller and Mrs. Miller were combined and tried together. Thus, the trial court was correct in treating this as a single case and conducting a single hearing concerning appellant's competency to stand trial in those consolidated cases. We hold it was entirely proper to do so.

Appellant claims the trial court erred when it allowed his confession in evidence. He contends that because of his impaired mental condition he was incapable of understanding the nature of the offense against him and the questioning of the police officers. From the evidence cited above concerning appellant's capacity to understand, we hold there was sufficient evidence to support the trial court's finding that appellant's confession was admissible.

Appellant claims that without his confession there was insufficient evidence to support his conviction. In view of our holding above that the confession in fact was admissible, we hold that there is sufficient evidence in this record to support appellant's conviction.

■ Appellant contends the trial court erred in overruling his plea in abatement on the ground that one of the grand jurors who indicted him was a brother-in-law of the deputy prosecuting attorney. Appellant is correct in his observation that at the time the charge was brought against him the statute required that a murder charge

be brought by indictment, citing the statute then in effect, Burns § 9–909. However, neither the relationship to counsel nor a personal bias is a factor which disqualifies a grand juror. For the present law, *see* Ind.Code § 33–4–5–7; *Sparks v. State* (1986), Ind., 499 N.E.2d 738; *Averhart v. State* (1984), Ind., 470 N.E.2d 666, *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323. We further observe, as was stated in *Sparks,* that a grand jury is not a trial body or an ultimate trier of fact. Thus, the Sixth Amendment right to a fair trial by an impartial jury is not violated by a lack of impartiality on the part of a grand juror. The trial court did not err in overruling appellant's plea in abatement.

■ Appellant claims the trial court erred in the admission of photographs of the bodies of the decedents. He cites *Kiefer v. State* (1958), 239 Ind., 103, 153 N.E.2d 899. In the *Kiefer* case, there were several photographs of the autopsy performed upon the victim, showing the surgeon's hands inside the body of the victim and various probes placed in the body. In the case at bar, we have only the photographs of Mr. and Mrs. Miller as they were found. Both of the bodies are fully clothed, and as pointed out by appellant, in a state of decomposition, which renders the photographs unpleasant to view. The photographs depict matters which the witnesses were allowed to describe in testimony. They were not more gruesome than one would naturally expect under the circumstances. Because they were relevant to the testimony, they were admissible at the discretion of the trial court. *Games v. State* (1989), Ind., 535 N.E.2d 530, *cert. denied,* 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158.

Appellant also contends that the court erred in allowing so many photographs of the same subject. There were six photographs of Mrs. Miller taken from various angles and eight photographs of Mr. Miller. Due to the nature of the evidence, we do not find that the number of photographs in this case constituted too many. *See Feliciano v. State* (1985), Ind., 477 N.E.2d 86.

The trial court did not err in permitting the photographs in evidence.

■ Appellant claims "several fundamental errors require reversal." He claims it was fundamental error for the State to elicit from several experts their opinion of Walker's guilt. He cites *Shepherd v. State* (1989), Ind., 538 N.E.2d 242 and *Head v. State* (1988), Ind., 519 N.E.2d 151. In those cases, we held it was impermissible for a witness to testify as to the credibility of another witness.

In the case at bar, the experts were testifying as to their examination of appellant and their impressions of his truthfulness as it affected their examination. None of the witnesses undertook to testify concerning the truthfulness of appellant's testimony. In fact, appellant did not testify at this trial. Thus, his truthfulness was not an issue concerning the presentation of evidence.

It indeed would have been difficult for the doctors to have given a lucid evaluation of their examination of appellant without observing the truthfulness or untruthfulness of his statements to them. This is not a case of one witness vouching for the truth and veracity of another witness. There is no error here.

■ Appellant claims the trial court committed fundamental error by not instructing the jury on an element of robbery. He contends that because he was found guilty of murder in the perpetration of a robbery the court should have instructed the jury concerning the elements of robbery. The trial judge did read the charging information as part of his instructions to the jury. The allegation read in part:

"[T]hen and there being engaged in an attempt to commit the said crime of robbery, by then and there unlawfully, feloniously, and forcibly and by violence and putting the said Frank George Miller, in fear, rob, take and steal from the person of the said Frank George Miller one billfold...."

The instructions, thus, when taken as a whole inform the jury of the elements of the charged crime. *See Price v. State*

(1992), Ind., 591 N.E.2d 1027. We find the jury was instructed properly.

■ Appellant claims the trial judge in his final instruction shifted the burden of proof to him. In his final instruction, the judge advised the jury that appellant was clothed with presumption of innocence; however, he observed that the infliction of a deadly wound with a weapon in the hands of the slayer, without provocation, is *prima facie* evidence of willful premeditation, then continued to instruct the jury that if they found beyond a reasonable doubt that appellant unlawfully inflicted the wound upon Frank George Miller and upon May Doria Miller, they could infer from the use of the gun in such a manner that the homicides were willful and premeditated. The instruction continues in this same vein. However, he also instructed the jury that if they found that the action was taken in self-defense or in sudden heat it would lower the grade of homicide. The instruction also covered the question of appellant's capacity to form the intent to commit the crime.

Appellant claims that such an instruction, which creates a presumption of intent, impermissibly shifts the burden of proof to the defendant. Appellant cites *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. *Sandstrom* held that an instruction that the "law presumes that a person intends the ordinary consequence of his voluntary acts" impermissibly creates a presumption in favor of the State on the element of intent and thus shifts the burden of proof to the defendant.

However, the Supreme Court of the United States also has held that other instructions may explain infirm language to the extent that a reasonable juror could not have concluded that the charge created an unconstitutional presumption. *Francis v. Franklin* (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344. This Court also had made this observation in *Blackburn v. State* (1988), Ind., 519 N.E.2d 554.

In the case at bar, the jurors were instructed thoroughly on a presumption of innocence and the definition of premeditation and malice. They also were instructed thoroughly on reasonable doubt. When one considers the instructions as a whole, we cannot say they created an unconstitutional presumption. We find no reversible error in the giving of the instructions.

Appellant claims the trial judge erred when he did not explain the charge and the statute in his final instruction. Appellant concedes that the court did give these instructions in its preliminary instructions. The record shows the trial judge clearly indicated to the parties that he would give his final instructions, but these did not include the preliminary instructions. He stated that he would give the parties time within which to state their objections to the giving of each and all of the instructions. However, the trial court specifically stated on the record "[n]either the State of Indiana nor the defendant requests that the Court reread to the Jury the Preliminary Instructions herein." Thus, any claim of error in this regard has been waived. *See Ingram, supra.*

The trial court is affirmed.

SHEPARD, C.J. and KRAHULIK, JJ., concur.

DeBRULER, J. concurs and dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring and dissenting.

The record of proceeding specifically states that the defendant did not object at trial to any preliminary or final jury instructions. The trial court's Instruction No. 19, which erected a presumption of intent against which appellant lodges his federal due process claim in this direct appeal, was given without the objection required by Ind.Trial Rule 51(C). The basis for this federal due process claim was first made express in case law after appellant's trial and conviction and before the briefing in this appeal. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The majority opinion ignores the procedural default at trial, deals directly with the merits of the constitutional claim,

and in so doing departs from the previous ambiguous course charted in *Jacks v. State* (1979), 271 Ind. 611, 394 N.E.2d 166, and *Hill v. State* (1990), Ind., 561 N.E.2d 784 (DeBruler and Dickson dissenting with opinion). This Court now rightly aligns this direct appeal case with those post-conviction cases in which the same claim in the same posture has been considered "fundamental error." *Reid v. State* (1988), Ind., 529 N.E.2d 1309.

Appellant Walker was tried upon an indictment charging three counts of first degree murder under the homicide statute then governing. Ind.Stat.Ann. § 10–3401 (Burns 1956). The first count charged that appellant purposely and with premeditated malice killed May Miller. The second count charged that appellant shot Frank Miller while engaged in robbing him, thereby killing him. The third count charged that appellant purposely and with premeditated malice killed the same Frank Miller. The jury returned separate verdicts of guilty on each of these three counts, and in conformity with the then-existing law, stated in each verdict that the punishment be life imprisonment. Ind.Stat.Ann. § 9–1819 (Burns 1956). The trial court sentenced appellant to life imprisonment.

I agree with the contention of appellant that the trial court's instructions employed an unconstitutional presumption aiding the prosecution and thereby denied federal due process. Within the several instructions on the elements of purpose and premeditated malice, the following separate paragraph exists:

> Every man is presumed to intend the natural consequences of his acts, and where one does an illegal act he is responsible for all the consequences that legitimately flow therefrom.

This instruction was condemned in *Sandstrom*. In its neighboring instructions, there is no clear and dominant statement and theme that the prosecution bore the burden to prove purpose and malice and that such elements may be inferred from proved facts, as was the case in this Court's case of *Blackburn v. State* (1988), Ind., 519 N.E.2d 554. Instead, here there

is a verbal labyrinth announcing further presumptions that the law requires to be made, and that proof of unspecified "unlawful acts" constitutes proof "prima facie" of purpose and malice. A reasonable jury could have interpreted this set of instructions as binding it to indulge a presumption of both purpose and malice in contravention of the due process clause. Reversal is therefore required.

In this instance, the original sentencing court did not specify the verdicts upon which it imposed sentence. The *Sandstrom* violation does not implicate the integrity of the verdict of guilty of felony murder robbery in the death of the man. The unconstitutional instruction only operated as an aid to the prosecution in fulfilling its burden to prove purpose and malice. It did not operate as an aid to the prosecution in fulfilling its burden to prove intent to steal, the state of mind required by the felony murder charge. I would therefore reverse appellant's convictions for the purposeful and malicious killings of May and Frank Miller, and remand for modification of the judgment to reflect that there be a single life sentence, and that it rests upon the verdict of guilty of the felony murder of Frank Miller, and for further consistent proceedings. Ind.Appellate Rule 15(N).

DICKSON, J., concurs.